OPINION *Page 2 
¶ {1} Defendant-appellant Alonzo Ransome appeals the decision of the Mahoning County Common Pleas Court granting a civil stalking protection order against him in favor of plaintiff-appellee Norma Caban. The issue is whether there was some competent, credible evidence on the elements of menacing by stalking, which is a prerequisite for granting a civil stalking protection order. For the following reasons, there was not some competent, credible evidence upon which the fact-finder could determine that appellant knowingly caused appellee to believe that he would cause her physical harm or alternatively that he knowingly caused appellee mental distress, as statutorily defined. For the following reasons, the judgment of the trial court is reversed on grounds of manifest weight of the evidence and the civil stalking protection order is vacated.
 STATEMENT OF THE CASE ¶ {2} Appellee dated appellant for fourteen years, and terminated the relationship at the end of May in 2007. After receiving multiple telephone messages from appellant over the summer, appellee filed a petition for a civil stalking protection order against him on October 17, 2007. An ex parte order was issued, and then the full hearing was held before a magistrate on November 5, 2007, where appellant and appellee both testified. At that time, the magistrate granted the petition for a protection order with an expiration date of November 5, 2009.
¶ {3} The magistrate found that appellant repeatedly called and left messages at appellee's home and on her cellular telephone, he came to her place of employment and he left a threatening message stating that when he found her, "all bets are off." The magistrate concluded that the preponderance of the evidence established that appellant knowingly engaged in a pattern of conduct that "caused [appellee] to believe that [he] will cause physical harm or cause or has caused mental distress." The magistrate then prohibited appellant from contacting and coming within fifty yards of appellee or entering appellee's property and place of employment. *Page 3 
 ¶ {4} Appellant filed timely objections to the magistrate's decision. On January 7, 2008, the trial court overruled the objections, adopted the magistrate's decision and granted appellee's petition for a civil stalking protection order. Because the clerk did not serve the parties with the entry until February 5, 2008, appellant's March 4, 2008 notice of appeal was timely filed.
 GENERAL LAW ¶ {5} In order to grant a petition for a civil stalking protection order, the trial court must hold a full hearing and proceed as in a normal civil action. R.C. 2903.214(D)(3). Notably, the petition is not evidence to be considered at that full hearing. Felton v. Felton (1997),79 Ohio St.3d 34, 42-43. The trier of fact must determine whether the preponderance of the evidence presented at the hearing establishes that the defendant engaged in a violation of R.C. 2903.211, which is the menacing by stalking statute. See R.C. 2903.214(C)(1). See, also,Felton, 79 Ohio St.3d at 42 (holding that since court considering a protection order is to proceed as in a normal civil action and since statute is silent on standard of proof, preponderance of evidence is the proper standard). The menacing by stalking statute provides:
¶ {6} "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211 (A)(1).
¶ {7} Our standard of review for whether the protection order should have been granted and thus whether the elements of menacing by stalking were established by the preponderance of the evidence entails a manifest weight of the evidence review. Abuhamda-Sliman v. Sliman161 Ohio App.3d 541, 2005-Ohio-2836, ¶ 9-10. See, also, Felton, 79 Ohio St.3d at 42-43
(where Court evaluated whether there was sufficient credible evidence to support the decision that elements of protection order were satisfied). If there is a question as to the restrictions imposed by the court, however, we review the court's decision for an abuse of discretion. See R.C. 2903.214(E) (allowing court to design order to ensure safety and protection). See, also, Abuhamda-Sliman, 161 Ohio App.3d 541 at ¶ 9. Here, appellant's arguments are all concerned with the granting of the petition, not its contents or restrictions. *Page 4 
 ¶ {8} Unlike criminal appeals, where we can reweigh the evidence, civil appeals require more deference to the trial court and require affirmance of those judgments supported by some competent and credible evidence. State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 26. Thus, civil judgments supported by some competent and credible evidence cannot be reversed on appeal as being contrary to the manifest weight of the evidence. Id. at ¶ 24, citing C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 280. Thus, we must evaluate whether there was some competent, credible evidence on each element of menacing by stalking.
¶ {9} In reviewing a trial court's weighing of competing evidence and credibility determinations, we are guided by a presumption that the trial court's factual findings are correct. Id. This is due in part to the fact that the trial court occupies the best position from which to view the witnesses and observe their demeanor, voice inflection, gestures, eye movements, etc. Id. We cannot reverse a civil judgment merely because we hold a different opinion on the weight of the evidence presented to the trial court and the credibility of the witnesses. Id.
 ASSIGNMENT OF ERROR ¶ {10} Appellant's sole assignment of error provides:
¶ {11} "THE COURT ERRED IN ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE."
¶ {12} Appellant claims that after "a couple" efforts to contact appellee were rebuffed, he stopped attempting to communicate with her. He urges that this was a typical example of a long-term relationship ending. He alleges that there was no evidence to support the elements of menacing by stalking. More specifically, he contends there was no pattern of activity, he did not knowingly cause appellee to believe that he would cause physical harm, and there was no mental distress.
¶ {13} Appellant's first argument concerns pattern of conduct, which is defined merely as two or more actions or incidents closely related in time. R.C. 2903.211(D)(1). The pattern can include messages or information sent via computer or telephone. R.C. 2903.211(D)(1), (6);2913.01(Y).
¶ {14} At the November 2007 hearing, appellee complained that appellant had been calling her since June 2007, even though she told him in May that she did not *Page 5 
want to speak to him again. (Tr. 4-5). She said that she spent all summer deleting his messages on her work and home phones because he leaves more than the ten messages that the voice mail system will hold. (Tr. 5). She explained that on September 9, 2007, appellant came to an open house she was holding as a realtor, and appellant acknowledged that he went to this open house to talk. (Tr. 14).
¶ {15} Appellee testified that appellant's October messages became threatening. She testified that one message stated that if he did not hear from her by midnight, then he would come looking for her at work or at a meeting or at an open house and that she would have to talk to him. (Tr. 7). Appellee played the latest October message for the court. (Tr. 8). The court could rationally believe this testimony on the amount of calls.
¶ {16} Furthermore, appellant admitted that he called appellee repeatedly in July 2007 and conceded that he also emailed her. (Tr. 11-12). Appellant also disclosed that he called appellee's sister in Florida when she went on vacation. (Tr. 13). Consequently, there is some competent, credible evidence regarding a pattern of activity. Thus, the court's decision on this element is valid.
¶ {17} Next, appellant contends that there was no evidence that he caused appellee to believe that he will cause her physical harm. This element was apparently found to exist because of appellant's persistence over the summer in combination with his final call, which appellee characterized as threatening and which the court also described as threatening because it relayed that "he would find her + `all bets are off'." (Tr. 7-8). In that call, appellant gave appellee a deadline to contact him, advised that he would come looking for her at work, and expressed confidence that she would talk to him this time. (Tr. 7). Besides this call, appellee had also explained that appellant came to an open house she was working and that she sat in her car to avoid talking to him. (Tr. 6). She testified merely that she told him "no more talking" and that he left without responding. (Tr. 9-10).
¶ {18} In a mere six pages of testimony given by appellee, she did not state that she feared for her safety. Instead, it seems as if what she feared was that appellant would confront her again and ask her again why she broke up with him after a fourteen-year relationship. The element of causing her to believe has subjective *Page 6 
requirements. Labeling a call as threatening does not express a belief that the caller would cause physical harm. That is, threatening to approach a person for conversation is not a threat of physical harm. As such, we cannot find some competent, credible evidence to support a finding that appellant knowingly caused appellee to believe that he would cause her physical harm.
¶ {19} We turn to the question of whether the alternative element of mental distress was satisfied. To review, the menacing by stalking statute states:
¶ {20} "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211 (A)(1).
¶ {21} Before proceeding to address what mental distress means, we must answer a statutory interpretation problem. Appellant's brief fluctuates between whether the defendant must have actually caused the victim to suffer mental distress or whether he need have only caused her to believe he would cause her mental distress. See Apt. Br. at 7 versus 8. The checked portion of the trial court's form entry proceeds as if the mental distress alternative is established by either causing mental distress or by causing the petitioner to believe that he will cause mental distress. See Order of Protection, page 2, first checked box ("caused [appellee] to believe that [he] will cause physical harm orcause or has caused mental distress") (emphasis added).
¶ {22} Some courts have held that menacing by stalking can be found even if the defendant only caused the victim to believe that mental distress would be caused. See, e.g., Irwin v. Murray, 6th Dist. No. L-05-1113, 2006-Ohio-1633, ¶ 18; Dayton v. Davis (1999),136 Ohio App.3d 26, 32 (2d Dist.).
¶ {23} However, this district and various other districts proceed as if the test is whether mental distress was in fact caused. SeeDarling v. Darling, 7th Dist. Nos. 06JE6, 06JE7, 2007-Ohio-3151, ¶ 20
("menacing by stalking involves either behavior that causes the victim to believe that he or she will be physically harmed, or behavior that causes mental distress to the victim"; State v. Werfel, 11th Dist. No. 2006-L-163, 2007-Ohio-5198, ¶ 26-27 (the test is whether defendant "knowingly acted in such a way that would cause a reasonable person to feel threatened of physical harm and/or suffer mental distress");Middletown v. Jones, 167 Ohio App.3d 679, 2006-Ohio-3465, ¶ 7 *Page 7 
(12th Dist.); Smith v. Wunsch, 162 Ohio App.3d 21, 2005-Ohio-3498, ¶ 18-19 (4th Dist); State v. Tichon (1995), 102 Ohio St.3d 758, 763
(9th Dist).
¶ {24} We maintain this position and further note that by repeating "to the other person" after both physical harm and mental distress, rather than merely placing it at the end of the sentence, the legislature expressed that "to believe" does not modify "mental distress". As such, any mental distress must have actually been caused.
¶ {25} We can now address whether there was some competent, credible evidence to show that appellant knowingly and actually caused any mental distress here. The menacing by stalking statute specifically defines mental distress as follows:
¶ {26} "(a) Any mental illness or condition that involves some temporary substantial incapacity; [or]
¶ {27} (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2).
¶ {28} Analyzing the available facts under the proper law, we conclude that there was not some competent, credible evidence showing that the defendant actually and knowingly caused mental distress. There is absolutely no indication that appellee developed a mental illness under R.C. 2903.211(D)(2)(a). Thus, we are left with the question of whether there was some competent, credible evidence that she developed a mental condition that involved some temporary substantial incapacity or that would normally require mental health services. See R.C. 2903.211(D)(2)(a)-(b).
¶ {29} We acknowledge that the fact-finder can rely on its own experience and knowledge to determine if mental distress was caused.Smith, 162 Ohio App.3d 21 at ¶ 18. However, mental distress for purposes of menacing by stalking is not mere mental stress or annoyance.
¶ {30} The magistrate heard evidence that appellant, who was appellee's boyfriend of fourteen years, kept leaving appellant messages asking to talk about why their long-term relationship suddenly ended. Appellant's final message seemed to be the final straw which caused appellee to report appellant. The trial court failed to preserve this call for our review but did outline its contents. As set forth above, the call *Page 8 
gave appellee a deadline to contact him, opined that he would find her wherever she is, warned that "all bets are off" and seemed confident that she would talk to him this time. The question is whether that call (combined with the prior behavior) actually caused appellee the kind of mental distress that is required by the definition portion of the statute.
¶ {31} Appellee did not testify that it did cause her such distress. Nor did she mention any stress reactions that could qualify as temporary substantial incapacity or that would lead one to seek mental health services. Rather, the testimony showed that appellee is sick of appellant and that he is annoyingly obsessed with why she left him after all their years together and why she refuses to speak to him. The calls may constitute telephone harassment but do not by themselves establish mental distress was actually suffered.
¶ {32} Nor did the open house encounter establish mental distress under the facts herein. Appellant did show up at her open house to which she responded by sitting in her car. See id. at ¶ 20 (evidence of changed routine can corroborate a finding of mental distress). However, he left after she told him that she would not speak to him. Even if this is enough to show mental stress, it is not enough to show mental distress as statutorily defined.
¶ {33} We also point out that the magistrate read the petition into the record. (Tr. 4). Yet, as aforementioned in our general recital of the relevant law, the petition is not evidence and its contents cannot be considered by the court in granting a petition. See Felton,79 Ohio St.3d at 42-42 (holding that pleading is not evidence so answer to petition for protection order cannot be used by court).
¶ {34} In conclusion, without any mention of or allusion to her mental state in the evidence presented to the court, the fairly stringent test of mental distress has not been met under the particular facts and circumstances of this case. Considering the totality of these facts and circumstances, the elements of menacing by stalking have not been demonstrated by some competent, credible evidence.
¶ {35} For all of the foregoing reasons, we hereby reverse the granting of the civil stalking protection order on manifest weight of the evidence grounds. In the appeal of a civil non-jury trial, two appellate judges can reverse and remand one time *Page 9 
on weight of the evidence grounds or the appellate court can enter the judgment that the trial court should have entered on that evidence. App. R. 12(C). We choose to vacate the civil stalking protection order and enter judgment for appellant.
Waite, J., concurs.
DeGenaro, J., concurs. *Page 1