[Cite as *Olson v. Olson*, 2016-Ohio-149.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY


Faith K. Olson                                    Court of Appeals No. WD-15-002

    Appellee                               Trial Court No. 2014DV0133

v.

Kevin L. Olson                                    **DECISION AND JUDGMENT**

    Appellant                              Decided:  January 15, 2016

* * * * *

Tonya M. Robinson, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Kevin Olson, appeals the judgment of the Wood County Court of

Common Pleas, Domestic Relations Division, issuing a domestic violence civil protection

order on behalf of appellee, Faith Olson.[1]  For the reasons that follow, we reverse.

---

[1] Appellee has not filed a brief in this appeal.

## Facts and Procedural Background

{¶ 2} Appellant and appellee have been married since 1981. For the past 20 years, appellant has suffered from chronic fatigue syndrome. Within the past two years, it has been diagnosed as bipolar disorder. When appellant is having an episode, he experiences a period of high anxiety lasting around seven days, during which time he tries to avoid people by staying in his room the entire time. Appellant then will experience a period of deep fatigue where he has difficulty staying awake, followed by a period of hyperactivity. Appellant testified that he typically has such an episode approximately once every six weeks, but has been having them more frequently due to stress.

{¶ 3} According to the parties, the incident that ultimately began the movement towards the request for a domestic violence civil protection order occurred in June 2014. At that time, residing with appellant and appellee was their 32-year-old daughter, along with her husband and two children. One night, appellant was awake and playing his guitar at around 2:30 a.m. Appellant's son-in-law came upstairs and confronted appellant, saying that the noise was disturbing the children. Appellant became agitated and woke up appellee, stating she should come between him and his son-in-law because they were going to have a yelling match. Appellant later realized what time it was, and was remorseful for his behavior. At the protection order hearing, appellant testified that the incident was a manifestation of his failure to take his medication for four or five days, which resulted in him feeling more irritable than usual.

2.

{¶ 4} After this incident, appellee told appellant that as a father's day gift she wanted to send him to Utah to visit his family for three weeks. Appellant insisted that he could not be gone for that long given the frequency that he meets with his various doctors. Eventually, appellant agreed to travel to Utah for one week around Halloween. Appellee made the travel arrangements.

{¶ 5} While appellant was in Utah, appellee filed for a divorce and for a domestic violence civil protection order. She then cancelled his return flight and sent all of his belongings, including his car, to him. She told him that she did not want him back in the state of Ohio.

{¶ 6} On December 10, 2014, the hearing on the protection order was held. The daughter testified first. She testified that in the past two years she has witnessed angry, violent outbursts involving yelling. However, she has not seen any physical violence. The daughter testified that these outbursts made her afraid. She further stated that she fears for the safety of her children because appellant has loaded guns and she has heard them go off during the night within the past two years. Finally, she testified that she has noticed that appellant oftentimes has slurred speech, is confused, or is "just not mentally all there."

{¶ 7} Appellant was called as a witness next, as on cross-examination. Appellant testified that he has approximately six long guns and four or five pistols, that they are never loaded, and that they each have a safety trigger. Appellant also testified that he has a BB gun that he has shot in the house because he was having some trouble with it. He

3.

stated that he would put up two pieces of cardboard on the wall and fire into them, but he acknowledged that one of those pieces must have fallen because the wall was littered with marks from the impact of the projectiles. Appellant testified that he stopped shooting the BB gun indoors almost a year ago.

{¶ 8} When asked if he had ever physically harmed his wife, appellant responded that he only ever pushed her onto a couch, and that was 20 years ago. He testified that he has never threatened to harm anyone in the house. He admitted that he did get angry on the night of the June 2014 confrontation, and may have cursed, but he did not tell anyone that he was going to harm them.

{¶ 9} Finally, appellee testified. She stated that she was afraid of appellant because he is not diligent in taking his medication, and sometimes over- or under-medicates, and she worries because she has been told that his bipolar disorder will only get worse as he ages. She also noted that appellant gets angry, and has pushed her down to the floor within the past six or seven years. Furthermore, she testified that she was concerned for her safety because appellant has not demonstrated a lot of regard for the dangers of firearms, recounting two instances where appellant accidentally dropped a loaded gun onto the floor.

4.

{¶ 10} Following the hearing, the trial court granted the domestic violence civil protection order, effective through June 10, 2015.[2]  In its entry, the court specifically found,

> [Appellant] is diagnosed with bipolar disorder.  He has told [appellee] at times that he does not always take his medication as it is prescribed.  [Appellant] admitted that he may overreact to certain things such as the time this summer when his son-in-law confronted him about playing the guitar at 2:30 a.m.  [Appellant] went and got [appellee] out of bed to help with the confrontation that he was having with his son-in-law.  [Appellant]'s daughter, her husband and their 2 children live in the same house.  She has heard [appellant] shots fired (sic) upstairs while she had the children in the home.  [Appellant] admitted that he shot holes in the wall from his air gun, including some aimed at an interior wall.  [Appellant]'s daughter cried and testified that she and her family stay in the basement because they are afraid of [appellant].  He has angry outbursts that have been directed at her and her mother ([appellee]).  [Appellant] admitted that he has angry outbursts directed to his wife - including before his trip to Utah in October.  [Appellant] is 6'2, 250 # and bigger than his family

---

[2] Appellee moved to dismiss this appeal on the grounds that it had become moot following the expiration of the civil protection order.  On August 6, 2015, we denied appellee's motion, reasoning that there were collateral consequences to the issuance of the civil protection order that continued to exist after its expiration, including issues regarding appellant's concealed firearm permit, obtaining housing, and his credit report.

5.

members. He had 6 long guns and 5 pistols at the home. It is clear that [Appellant] has engaged in a pattern of behavior that has caused mental distress to the family members and the family members need protection.

## Assignment of Error

{¶ 11} Appellant has timely appealed the issuance of the protection order, and now assigns one error for our review:

I. The Court of Common Pleas, Division of Domestic Relations, abused its discretion when it granted Petitioner/Appellee a Domestic Protection Order against the Respondent/Appellant as such was against the manifest weight of the evidence and an abuse of the Court's discretion when there was no evidence of domestic violence.

## Analysis

{¶ 12} "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence. R.C. 3113.31(D)." *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997), paragraph two of the syllabus. "The decision to grant or dismiss a request for a civil protection order is within the discretion of the trial court." *Rangel v. Woodbury*, 6th Dist. Lucas No. L-09-1084, 2009-Ohio-4407, ¶ 11, citing *Deacon v. Landers*, 68 Ohio App.3d 26, 31, 587 N.E.2d 395 (4th Dist.1990). "An appellate court will not reverse a trial court's decision regarding a civil protection order absent an abuse of discretion." *Id.*, citing *Parrish v. Parrish*, 146 Ohio

6.

App.3d 640, 646, 767 N.E.2d 1182 (4th Dist.2000). An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "If the trial court's decision is supported by credible and competent evidence, the appellate court will not reverse the decision as an abuse of discretion." *Rangel* at ¶ 11, citing *Jarvis v. Jarvis*, 7th Dist. Jefferson No. 03-JE-26, 2004-Ohio-1386, ¶ 13.

{¶ 13} Pursuant to R.C. 3113.31, a person who is subject to domestic violence may petition a court for a protection order. Relevant here, domestic violence means "Placing another person by the threat of force in fear of imminent serious physical harm," or "[E]ngaging in a pattern of conduct [that knowingly causes] [a family or household member] to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 3113.31(A)(1)(b) and 2903.211(A)(1).

{¶ 14} Expounding on those elements, "'Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). "In determining what constitutes a pattern of conduct for purposes of R.C. 2903.211(D)(1), courts must take every action into consideration even if, * * * 'some of the person's actions may not, in isolation, seem particularly threatening.'" *Ensley v. Glover*, 6th Dist. Lucas No. L-11-1026, 2012-Ohio-4487, ¶ 10, quoting *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 10 (12th Dist.).

7.

{¶ 15} "Mental distress" means "Any mental illness or condition that involves some temporary substantial incapacity," or "Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2). "The statute, however, 'does not require that the victim actually experience mental distress, but only that the victim believes the stalker would cause mental distress or physical harm.'" *Ensley* at ¶ 13, quoting *Bloom v. Macbeth*, 5th Dist. Ashland No. 2007-COA-050, 2008-Ohio-4564, ¶ 11. "Moreover, the testimony of the victim herself as to her fear is sufficient to establish mental distress." *Id.*, citing *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 48. Notably, we recognize that "mental distress for purposes of the menacing by stalking statute is not mere mental stress or annoyance." *Fondessy v. Simon*, 6th Dist. Ottawa No. OT-11-041, 2013-Ohio-3465, ¶ 19, quoting *Caban v. Ransome*, 7th Dist. Mahoning No. 08 MA 36, 2009-Ohio-1034, ¶ 29.

{¶ 16} Appellant argues that the trial court abused its discretion because there was no evidence showing a pattern of behavior that appellant knew would cause appellee to believe that appellant would cause her physical harm or mental distress. We agree. In the hearing below, there was testimony concerning four discreet events. The first occurred 20 years ago when appellant admitted to pushing appellee onto the couch. Then, within the past six or seven years, appellant pushed appellee down to the floor. For some time up until one year ago, appellant fired a BB gun inside the house at a target on

8.

the wall when no one else was present in the room. Finally, appellant got into an argument with his son-in-law in June 2014, which undisputedly did not lead to a physical altercation. In addition to these events, there was general testimony that appellant would sometimes get angry and yell at appellee or his daughter.

{¶ 17} In our view, this was insufficient evidence to establish that appellant had knowingly engaged in a "pattern of conduct" "closely related in time" that caused appellee or the daughter to be in fear of mental distress or physical harm. The testimony from the hearing describes only one incident in the past several years that involved a confrontation with another person, and in that situation appellant did not threaten or exert physical force. Furthermore, general allegations that appellant would get angry and yell without providing the context or content of the outburst provides no basis for us to determine that appellee or the daughter feared mental distress or imminent physical harm.

{¶ 18} Accordingly, finding insufficient evidence to support the trial court's issuance of a domestic violence civil protection order, the sole assignment of error is well-taken.

{¶ 19} On consideration whereof, the court finds that substantial justice has not been done the party complaining and the judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is reversed and vacated. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                JUDGE

Arlene Singer, J.               

Thomas J. Osowik, J.              _____
CONCUR.                                          JUDGE


                                 _____
                                                JUDGE

---

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.