[Cite as *J.W. v. D.W.*, 2019-Ohio-4018.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| J.W., | : | |
| Petitioner-Appellee, | : | No. 19AP-52 |
| v. | : | (C.P.C. No. 18DV-719) |
| D.W., | : | (REGULAR CALENDAR) |
| Respondent-Appellant. | : | |

D E C I S I O N

Rendered on September 30, 2019

**On brief:** *D.W.*, pro se. **Argued:** *D.W.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

SADLER, J.

{¶ 1} Respondent-appellant, D.W., appeals the January 23, 2019 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, issuing a domestic violence civil protection order ("CPO") to petitioner-appellee, J.W. For the following reasons, we affirm the trial court order.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellee is the adult child of appellant. On May 29, 2018, appellee filed a petition for a CPO against appellant alleging appellant has engaged in telephone harassment, stalking, and trespassing for years, has made veiled threats to C.W. (his wife), talked about getting a gun, and has paranoid schizophrenia that she refuses to treat. According to the petition, due to appellant's behavior, appellee, C.W., and their roommate fear for their safety, and the stress of appellant's continued harassment is effecting C.W.'s

mental state and recovery from a surgery. The trial court granted an ex parte CPO and set the matter for a full hearing. Multiple continuances followed.

{¶ 3} On January 3, 2019, appellant filed a motion for deposition and discovery asking the court for an order to depose appellee at appellant's home in order to "establish foundation for this hearing and litigation." (Mot. for Disc. & Dep. at 1.) In her motion, appellant stated appellee's only complaint is he does not want to hear from her and does not want anything from her. According to appellant, "this needs to change" due to her serious health condition, and she "no longer [has] time to be patient." (Mot. for Disc. & Dep. at 1, 2.) She states that "[u]p to now, I've kept my distance and just called. Even when dropping his belongings off, I left them on the porch and waited at a distance for him to acknowledge receipt. And he did want his stuff. I've called for wellness checks since his Dad passed away." (Mot. for Disc. & Dep. at 2.) Appellant also states that the allegations of mental health are serious and causing her problems and that both C.W. and their mutual friend, B.S., are showing up at her work, following her, working with people who appellant is building a case against with the "fraud unit," and are trying to extort money from her. (Mot. for Disc. & Dep. at 2.) Appellant adds that pictures of appellant and appellee are being "used/sold." (Mot. for Disc. & Dep. at 2.)

{¶ 4} In early January 2019, appellant issued subpoenas to 19 people. A full hearing was held before a judge on January 23, 2019. Both appellant and appellee appeared, pro se, at the full hearing and testified on their own behalf.[1]

{¶ 5} At the outset of the hearing, appellant asked the trial court judge about her pending motion. The trial court denied the motion to conduct a deposition of appellee and stated appellant could ask appellee questions related to the CPO at the hearing itself.

{¶ 6} Appellee then testified on his own behalf. According to appellee, he wanted no contact with appellant but appellant nevertheless persisted in emailing him, texting him, showing up at his home, and having the police conduct wellness checks on him. Appellee offered a binder of exhibits in support of his testimony but did not bring a copy of the exhibits for appellant. Appellant told the trial court it was okay for the judge to look at the exhibits and then show the exhibits to appellant.

---

[1] On July 31, 2019, appellant filed a motion to supplement the record with the transcript of the full hearing. Appellee did not oppose the motion. In the interest of justice, we granted appellant's motion to supplement the record on September 6, 2019. App.R. 9(E); *D.M.W. v. E.W.*, 10th Dist. No. 17AP-359, 2018-Ohio-821, ¶ 8.

{¶ 7}  Appellee's exhibits included: a notarized affidavit from C.W. attesting to her stress, anxiety, and fear regarding his mother; medical records of C.W.; a case index of a 1988 criminal trespass case brought against appellant by a public school system; a May 2018 police report from appellant calling the police to conduct a wellness check on appellee; a May 2018 police report documenting C.W.'s call to police when appellant was looking at the property next door to their property, which was for sale; three years of time clock records from C.W.'s place of employment to counter appellant's contention that C.W. was following her; information about the 22-caliber, tactical pellet rifle appellant received from an online store; approximately two years of emails from appellant to appellee, which appellee testified were unsolicited and unresponded to; text messages from appellant to appellee beginning in 2016; and a retail description of the pellet rifle owned by appellant. (Ex. at 253.)

{¶ 8}  Appellee described some of the email content as documenting appellant's ongoing, decade-long contention that various people behind the house yell things at her, and her belief that C.W. was involved with these people in the backyard.  According to appellee, other emails from appellant to appellee show appellant recognized appellee wanted nothing to do with her but nonetheless persisted in emailing and texting him, sending the police to his house to conduct wellness checks when he would not respond to her, threatening to sue him and others if he did not respond to her, and stating she was including him in a lawsuit so that she could depose him since he would not talk to her.

{¶ 9}  Appellant testified on her own behalf.  According to appellant, she does not have paranoid schizophrenia.  Appellant stated she was being followed by people related to an actual FBI case, and this has to do with her son since C.W. has shown up at places appellant was working.  On further questioning, appellant could not produce any dates C.W. followed her.  Appellant repeatedly testified that her desire to make sure appellee is taken care of after she passes away motivates her to contact appellee and that she would continue to contact appellee regardless of his cooperation or desire to be left alone.  "[T]here isn't anything that the Court * * * can do about this. * * * [O]ne way or another, I am going to make sure that [appellee is] taken care of after I die.  Now, we can do that with your cooperation * * * or we can do it without your cooperation."  (Tr. at 49-50.)

{¶ 10} Regarding her interest in buying the house next to appellee, appellant testified she did not intend to live in the house but would buy it as a "rehab house"; she disagreed that her text to appellee stating "wanna be neighbors?  Oh, you could give me a phone call" instead was pushing herself on appellee.  (Tr. at 55, 64.)  Appellant suggested she would sue appellee for loss of income from not purchasing the property next door from him due to the protection order.

{¶ 11} Appellant further testified she did not believe her contact with appellee meets the threshold for the protection order since there had not been any violence, since offering appellee assistance does not equate to harassment, and having the police conduct wellness checks on him two or three times a year is not stalking.  Appellant released the police officer who she subpoenaed for the hearing, called no other witnesses, and submitted no other evidence.

{¶ 12} On the same day as the hearing, the trial court granted appellee a CPO against appellant, effective for five years.  The CPO directs appellant, in pertinent part, to: not abuse, harm, attempt to harm, threaten, follow, stalk, or harass appellee or C.W.; not enter or interfere with appellee and C.W.'s residence, school, business, or place of employment; stay away from appellee and C.W. and, specifically, to not be present within 100 yards of appellee and C.W. or any place appellant knows or should know they are likely to be; not initiate or have any contact with appellee or C.W.; not remove, damage, hide, or dispose of any property owned or possessed by appellee or C.W.; not cause or encourage any person to do acts prohibited by the CPO; and not possess, use, carry, or obtain any deadly weapon while the CPO is active.

{¶ 13} Appellant filed a timely appeal.

## II.  ASSIGNMENTS OF ERROR

{¶ 14} Appellant assigns the following as trial court error:

[1.]   The court errored procedurally by not requiring the petitioner [J.W.] to provide a copy of the 2 inch binder of exhibits which he submitted to the court. The court further errored by not showing the exhibits to defendant [D.W.] as each was discussed.

[2.] The court errored in denying the requested deposition.

[3.] The court errored in not permitting witnesses to be called by [D.W.], particularly his wife [C.W.] and their partner [B.S.].

[4.] The court abused it's discretion by preventing [D.W.] from owning or carrying a fire arm.

[5.] The court errored in giving consideration to [C.W.'s] health and stress issues.

[6.] The court errored in issuing this CPO for five years.

[7.] The court abused it's discretion by granting the CPO when the standard requires the element of knowingly causing distress.

[8.] The court abused it's discretion in issuing a CPO without sufficient evidence.

[9.] The court errored by granting a CPO without sufficient evidence.

[10.] The court errored in granting a CPO using the evidence presented.

[11.] The court abused it's discretion by issuing a CPO for the purpose of preventing [D.W.] from purchasing the house next to my son's residence.

(Sic passim.)

### III. STANDARD OF REVIEW

{¶ 15} "Generally, the decision of whether or not to grant a CPO lies within the sound discretion of the trial court." *C.L. v. T.B.*, 10th Dist. No. 17AP-813, 2018-Ohio-1074, ¶ 5. *Peterson v. Butikofer*, 10th Dist. No. 18AP-364, 2019-Ohio-2456, ¶ 38. An abuse of discretion connotes a decision that was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Where the trial court's decision to grant a CPO is supported by "sufficient, credible evidence * * * that the respondent had engaged in acts or threats of domestic violence," the trial court has not abused its discretion. (Citations omitted.) *Peterson* at ¶ 39; *Olson v. Olson*, 6th Dist. No. WD-15-002, 2016-Ohio-149, ¶ 12. The scope and duration of a CPO is likewise within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the decision was

arbitrary, unconscionable, or unreasonable. *Campbell v. Underwood*, 10th Dist. No. 09AP-1125, 2010-Ohio-2909, ¶ 11; *T.S. v. B.S.*, 10th Dist. No. 18AP-302, 2018-Ohio-4987, ¶ 27.

{¶ 16} Legal questions, including interpreting statutory authority, are reviewed de novo on appeal. *Martin v. Martin*, 10th Dist. No. 13AP-171, 2013-Ohio-5703, ¶ 6.

## IV. LEGAL ANALYSIS

{¶ 17} For clarity of analysis, we will at times consider appellant's assignments of error out of order and have grouped certain assignments of error together where appropriate. We preliminarily note that we will address appellant's assignments of error only and disregard extraneous allegations which fall outside of the assignments of error and the record of this appeal. App.R. 12(A)(1)(b); *Blevins v. Blevins*, 10th Dist. No. 14AP-175, 2014-Ohio-3933, ¶ 12.

### A. Appellant's First Assignment of Error

{¶ 18} Appellant's first assignment of error contends the trial court erred procedurally and violated her due process rights by not requiring appellee to provide her a copy of the binder of exhibits. Appellant further contends the trial court erred by not showing the exhibits to appellant as each was discussed. Appellant cites to Loc.R. 3(E)(3) of the Franklin County Court of Common Pleas, Division of Domestic Relations, written instructions from the trial court magistrates, and an article on Ohio trial practice.

{¶ 19} First, Loc.R. 3(E)(3) of the Franklin County Court of Common Pleas, Division of Domestic Relations, addresses case management in divorces. Therefore, it is inapplicable to the present case. Moreover, even if appellee was required to provide the exhibits to appellant in the manner argued, in this case appellant expressly agreed to the procedure proposed by the judge, did not raise the issue of not being provided with the exhibits prior to the hearing, did not object to not being presented each item as it was discussed with the trial court, and did not object to the exhibits being admitted into evidence at the close of the hearing. Furthermore, no record evidence demonstrates the binder was not presented to appellant.

{¶ 20} "It is a well-established rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." (Citations omitted.) *State v. Quarterman*, 140 Ohio St.3d

464, 2014-Ohio-4034, ¶ 15. Furthermore, a party is not "permitted to take advantage of an error that he himself invited or induced the trial court to make." *State ex rel. Mason v. Griffin*, 90 Ohio St.3d 299, 303 (2000). We additionally note appellant, who received the exhibits prior to appeal, did not demonstrate how receipt of those exhibits at the full hearing would have affected the outcome of this case. Considering all the above, we find appellant has not demonstrated the trial court erred.

{¶ 21} Accordingly, appellant's first assignment of error is overruled.

### B. Appellant's Second Assignment of Error

{¶ 22} Appellant's second assignment of error contends the trial court erred and violated her due process rights by denying her motion and subsequent request to depose appellee. In support of her assignment of error, appellant cites to "Rule 26 A," which we presume to be Civ.R. 26(A), as providing "the right for trial preparation" and cites generally to *Dater v. Charles H. Dater Found.*, 1st Dist. No. C-020675, 2003-Ohio-7148, for the proposition that a trial court abuses its discretion "based on an error made by the court related to denying discovery." (Appellant's Brief at 8.) Appellant asserts "[a]dditional assignment of errors [sic] will document errors of fact or lack thereof and other errors which would have been exposed in deposition." (Appellant's Brief at 8.) Appellant mentions "65.1," which we presume to refer to Civ.R. 65.1. (Appellant's Brief at 7.)

{¶ 23} Civ.R. 26(A) provides that it is the policy of the civil procedure rules "(1) to preserve the right of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (2) to prevent an attorney from taking undue advantage of an adversary's industry or efforts." Civ.R. 26(A). The rule specifies deposition on oral examination as one of the methods to obtain discovery. Civ.R. 26(B)(1) provides that "[u]nless otherwise ordered by the court in accordance with these rules, * * * [i]n general[, p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."

{¶ 24} Civ.R. 65.1 provides special procedures for CPOs in line with applicable statutory requirements that account for the protection of victims of domestic violence, stalking, and sexually oriented offenses. Civ.R. 65.1, Staff Note (July 1, 2012 Amendment). Under Civ.R. 65.1(D)(2), "[d]iscovery may be had only upon the entry of an order

containing all of the following to the extent applicable: (a) The time and place of the discovery; (b) The identities of the persons permitted to be present, which shall include any victim advocate; and (c) Such terms and conditions deemed by the court to be necessary to assure the safety of the Petitioner, including if applicable, maintaining the confidentiality of the Petitioner's address."

{¶ 25} Regarding the presentation of evidence in a CPO full hearing, in *D.M.W. v. E.W.*, 10th Dist. No. 17AP-359, 2018-Ohio-821, ¶ 12, we noted that although the term "full hearing" is not statutorily defined, in general, a full hearing on a CPO petition "is one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety of the step asked to be taken." (Citations omitted.) *Id.* "[W]here the issuance of a protection order is contested, the court must, at the very least, allow for presentation of evidence, both direct and rebuttal, as well as arguments." (Citations omitted.) *Id.*

{¶ 26} In this case, during the full hearing on the CPO, the trial court denied appellant's request to depose appellee and told appellant she could question appellee during the hearing if her questions were related to the case and not about her divorce with appellee's father. As explained in more detail below, we find appellant has not demonstrated the trial court erred in denying her motion to depose appellee on this record.

{¶ 27} First, appellant has not cited to which part of *Dater* she believes applies to this case. Regardless, *Dater* is an estate and charitable trust case in which the First District Court of Appeals found the trial court erred in granting, during a deposition, a defendant's motion for a protective order barring inquiry into certain topics and corresponding denial of the plaintiff-appellant's request to complete the deposition of a trustee. We find *Dater* is not dispositive to this case, which, unlike *Dater*, involves a CPO full hearing and the proposed person to be deposed testifies at the hearing.

{¶ 28} Second, while appellant is correct that the Ohio Civil Rules provide for discovery by deposition generally, appellant has not shown these rules required the trial court in this case to allow her to depose her son. Appellant's motion for deposition, filed 20 days prior to the January full hearing, largely consists of matters irrelevant to whether a CPO is warranted in this case. Record evidence additionally shows appellant generally views deposing appellee as a tool to force him to speak to her since he refuses to otherwise.

Furthermore, contrary to appellant's argument, we find no "errors of fact or lack thereof * * * which would have been exposed in deposition." (Appellant's Brief at 8.) Appellant had the chance to and did question appellee during the full hearing. She likewise had the opportunity to present evidence in opposition to appellee's assertions but she did not do so beyond her own testimony.

{¶ 29} Considering all the above, we find appellant has not demonstrated the trial court erred or abused its discretion in denying her request to depose her son on the facts of this case. *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal). Therefore, we find appellant's assignment of error to lack merit.

{¶ 30} Accordingly, appellant's second assignment of error is overruled.

### C. Appellant's Third Assignment of Error

{¶ 31} Appellant's third assignment of error contends the trial court erred procedurally and violated her due process rights by not permitting her to call witnesses. We disagree.

{¶ 32} As previously provided, a full hearing on a CPO petition "is one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety of the step asked to be taken." (Citations omitted.) *D.M.W.* at ¶ 12. "[W]here the issuance of a protection order is contested, the court must, at the very least, allow for presentation of evidence, both direct and rebuttal, as well as arguments." (Citations omitted.) *Id.*

{¶ 33} Appellant cites *H.C. v. R.C.*, 10th Dist. No. 15AP-936, 2016-Ohio-668, ¶ 13, *Tarini v. Tarini*, 10th Dist. No. 12AP-336, 2012-Ohio-6165, and *Spigos v. Spigos*, 10th Dist. No. 03AP-682, 2004-Ohio-757, ¶ 16, in support of her assignment of error. In *H.C.*, we found the trial court committed plain error in failing to conduct a full hearing where there was no dispute the trial court did not allow the respondent to present any evidence because the trial court mistakenly believed it was compelled to grant a CPO based on an existing stay away order in a criminal case. In *Tarini*, we found a CPO petitioner had been deprived of a full hearing where the trial court denied the petitioner the opportunity to present additional evidence but then dismissed his request for the CPO because his evidence did not establish a prima facie case for such an order. Finally, in *Spigos*, we found the CPO

petitioner was not afforded a meaningful opportunity to be heard where the record indicated that, without warning, the trial court interrupted the testimony of the petitioner, requested to speak with counsel off the record, and subsequently entered judgment against the petitioner on the basis that the petitioner had failed to prove an element of the CPO.

{¶ 34} Each case is readily distinguishable from the case at hand, which, while lacking some formality and structure, did allow appellant the opportunity to present evidence and make her argument against the CPO in accordance with *D.M.W.* and *Tarini*. We note the witnesses mentioned by appellant at the hearing and cited to in her appellate brief—a witness to appellee's alleged kidnapping as a child and "multiple witnesses" to her not being physically violent with appellee—were not relevant to the CPO at hand. (Tr. at 57.) Appellant does not cite to, nor do we find, anywhere in the transcript where appellant asked to call C.W. or B.S. at the full hearing or the trial court actually denying such a request. Therefore, considering all the above, we find appellant's assignment of error to be against the record and to lack merit.

{¶ 35} Accordingly, appellant's third assignment of error is overruled.

### D. Appellant's Fifth Assignment of Error

{¶ 36} In her fifth assignment of error, appellant contends the trial court erred by considering C.W.'s health and stress issues. She refers to hearing testimony of appellee as well as the discussions between appellee and the court regarding the affidavit of C.W., which attested to C.W.'s fear, stress, and anxiety caused by appellant and the resultant impact to their lives and C.W.'s health.

{¶ 37} Specifically, appellant argues: the trial court was improperly trying to use the order to prevent C.W. from adverse health effects due to stress, and the evidence did not amount to "mental distress" but, rather, merely mental stress or annoyance; the evidence of C.W.'s stress is not "admissible"; no evidence or documentation of C.W.'s stress such as a "report of seeing a professional" was submitted to the trial court; her son (not appellant) is the cause of the stress since "[h]e is the one * * * plant[ing] these fears" and "perpetuating these allegations"; and, regardless, C.W.'s health issues are resolved. (Appellant's Brief at 11-12.) For the following reasons, we disagree.

{¶ 38} At the outset, we note that many of these arguments seem to involve issues— such as sufficiency and/or weight of the evidence—that are unrelated sustaining the

assignment of error. As previously noted, "this court rules on assignments of error only." *Blevins,* 2014-Ohio-3933, at ¶ 12; App.R. 12(A)(1)(b). The sufficiency of the evidence to support a protection order in this case is addressed later in this decision in regard to her seventh, eighth, and tenth assignments of error. Because appellant challenged only the trial court's "consideration" of C.W.'s health and stress issues, we will consider that question alone. (Appellant's Brief at 1o.)

{¶ 39} Appellant does not challenge mental distress as a basis to support the CPO issued under R.C. 3113.31 in this case. As defined in R.C. 3113.31(A)(1)(a)(ii), the definition of domestic violence includes "committing a violation of [R.C.] 2903.211," the menacing by stalking statute. Menacing by stalking under R.C. 2903.211(A)(1) is supported where a person, "by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person *or cause mental distress to the other person or a family or household member of the other person.*" (Emphasis added.) Thus, "explicit or direct threats of physical harm are not necessary to establish a violation of R.C. 2903.211(A)." *Kramer ex rel. Kramer v. Kramer,* 3d Dist. No. 13-02-03, 2002-Ohio-4383, ¶ 15.

{¶ 40} R.C. 2903.211(D)(2)(b) defines mental distress, in part, as "[a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, *whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.*" (Emphasis added.) *See also Dunkin v. Ireland,* 10th Dist. No. 04AP-1175, 2005-Ohio-3371, ¶ 16-17 (finding issuance of CPO under the menacing by stalking prong of R.C. 3113.31(A)(1) to be supported by a preponderance of the evidence where petitioner's mental distress, exhibited through her statements regarding being fearful of the respondent and having panic attacks, was reasonable given the respondent's repeated unwanted contact with the petitioner).

{¶ 41} Here, contrary to appellant's contention, we find C.W.'s fear, anxiety, and health to be relevant to meeting the statutory definition of mental distress under R.C. 2903.211. Furthermore, because the definition of mental distress specifies a person need not pursue professional treatment or services in order for that mental condition to serve as

a basis for establishing menacing by stalking under R.C. 2903.211(A)(1), the lack of a medical or professional opinion did not render C.W.'s affidavit inadmissible. The cases cited by appellant[2] are either irrelevant to the assignment of error or distinguishable and not dispositive to the case at hand. We further find appellant's contentions regarding appellee as the cause of C.W.'s distress to be against the record, and appellant's comment about C.W.'s current health state to be irrelevant and based on information outside of the record.

{¶ 42} Considering all the above, we find the trial court did not err by considering C.W.'s health and stress issues and, therefore, appellant's assignment of error lacks merit.

{¶ 43} Accordingly, appellant's fifth assignment of error is overruled.

### E. Appellant's Seventh, Eighth, and Tenth Assignments of Error

{¶ 44} Appellant's seventh, eighth, and tenth assignments of error collectively challenge aspects of the sufficiency of the evidence to support the trial court's issuance of the CPO. We address them together.

{¶ 45} "A person seeking a CPO must prove domestic violence or threat of domestic violence by a preponderance of the evidence." *Dunkin* at ¶ 14, citing *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. R.C. 3113.31(A)(1)(a)(ii) defines "domestic violence," in relevant part, as "[t]he occurrence of one or more of the following acts against a family or household member: * * * Placing another person by the threat of force in fear of imminent serious physical harm *or committing a violation of section 2903.211* or 2911.211 of the Revised Code." (Emphasis added.)

{¶ 46} R.C. 2903.211(A)(1) addresses menacing by stalking and provides in part: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person *or cause mental distress to the other person or a family or household member of the other person.*" (Emphasis added.) R.C. 2903.211(A)(2)(a) specifies that prohibited conduct includes "use of any form of written communication or any electronic method of remotely transferring information * * * [to]

---

[2] *Thomas v. Thomas*, 44 Ohio App.3d 6, 7 (10th Dist.1988); *Studer v. Studer*, 3d Dist. No. 3-11-04, 2012-Ohio-2838, ¶ 29; *Kramer*; *Caban v. Ransome*, 7th Dist. No. 08 MA 36, 2009-Ohio-1034, ¶ 31.

post a message or use any intentionally written or verbal graphic gesture with purpose to * * * [v]iolate division (A)(1)."

{¶ 47}  R.C. 2903.211(D) sets forth definitions for "pattern of conduct" and "mental distress."  Under R.C. 2903.211(D)(1), "[p]attern of conduct" means, in pertinent part, "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."  "In determining what constitutes a pattern of conduct for purposes of R.C. 2903.211(D)(1), courts must take every action into consideration even if * * * some of the person's actions may not, in isolation, seem particularly threatening."  (Citations omitted.)  *Olson*, 2016-Ohio-149, at ¶ 14.

{¶ 48}  Under R.C. 2903.211(D)(2), "[m]ental distress" means any of the following:

> (a)  Any mental illness or condition that involves some temporary substantial incapacity;
>
> (b)  Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

" '[M]ental distress for purposes of menacing by stalking is not mere mental stress or annoyance.' "  *Ellet v. Falk*, 6th Dist. No. L-09-1313, 2010-Ohio-6219, ¶ 38, quoting *Caban v. Ransome*, 7th Dist. No. 08 MA 36, 2009-Ohio-1034, ¶ 29.  However, it "need not be incapacitating or debilitating."  *Jenkins v. Jenkins*, 10th Dist. No. 06AP-652, 2007-Ohio-422, ¶ 19.  "[E]xpert testimony is not required to find mental distress.  Lay testimony may be sufficient."  *Id.  See also Ellet* at ¶ 38 ("[T]estimony that the offender's conduct or actions caused the victim considerable fear and anxiety can support a finding of mental distress.").  "A trial court may rely on its knowledge and experience in determining whether mental distress has been caused."  (Citation omitted.)  *Jenkins* at ¶ 19.

{¶ 49}  The mental state of "knowingly" is set forth in R.C. 2901.22(B), which states:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its

> existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

*See also Ellet* at ¶ 28-30.

{¶ 50} In this case, appellant first argues, in her seventh assignment of error, that the trial court erred by granting the CPO when the evidence did not show she "knowingly caus[ed] distress." (Appellant's Brief at 13.) According to appellant, she has been estranged from appellee for years and there was no way appellant could know about C.W.'s health problems or what appellee was saying to C.W. Further, appellant argues that "[p]ossibly annoying" appellee and C.W. does not meet the standard for the CPO. (Appellant's Brief at 13.) In her eighth assignment of error, appellant contends the trial court abused its discretion by issuing a CPO without sufficient evidence since her behavior does not rise to the level of stalking, and it is inappropriate to use a CPO "merely to create a buffer-zone" around C.W. (Appellant's Brief at 14.) She argues that her buying the house next door may create a temporary uncomfortable situation but does not meet the CPO standard. In her tenth assignment of error, appellant contends the trial court erred in granting the CPO using the evidence presented. Under this assignment of error, appellant cites to *J.T. v. R.T.*, 9th Dist. No. 14CA0061-M, 2015-Ohio-4418, to assert that use of bribes, "carrots," and some threats of action when dealing with children is normal and not a basis to issue a CPO. (Appellant's Brief at 16.) As to the number of phone calls she makes to appellee, appellant states "the standard is a legitimate reason for making a call," and her legitimate reasons to call included dealing with his belongings that were still at her house, giving appellee reminders, such as to lock his doors or wear his helmet, and addressing "things that need to be put in order before [she] dies." (Appellant's Brief at 16, 17.) Appellant also cites to *Gannon v. Gannon*, 6th Dist. No. WD-07-078, 2008-Ohio-4484, in contending that two alleged previous occurrences were too old to be considered in support of the CPO.

{¶ 51} Having reviewed the record of the full hearing, we disagree that the trial court erred in granting the protection order in this case. Record evidence shows an extensive history, which spans years prior and up to the petition for the CPO, of appellant repeatedly contacting appellee by phone, email, and appearing at his house. Appellant's repeated contacts persisted despite her acknowledgment of appellee's lack of response and desire to be left alone, and she openly discussed and demonstrated her willingness to use police wellness checks and lawsuits to force appellee to interact with her. In testifying at the full

hearing, appellant continued to express her resolve to force appellee to interact with her despite his wishes. Furthermore, in her emails, text message, and testimony, appellant accuses appellee's wife, C.W., of unsubstantiated actions, such as showing up at appellant's places of employment, being involved with people who appellant believes are harassing her and threatening her, and states appellant would not tolerate C.W.'s harassment anymore. Appellee submitted as an exhibit an affidavit of C.W. attesting to the fear and anxiety caused by appellant's behavior and communications, the changes appellee and C.W make in their daily lives to attempt to avoid her, and the impact the stress and anxiety has had on C.W.'s health and recovery from a surgery.

{¶ 52} Having carefully considered appellant's arguments, we find this record contains sufficient evidence to demonstrate appellant engaged in a pattern of conduct that, regardless of her purpose, she knew would probably cause mental distress for purposes of R.C. 2903.211. R.C. 2903.211(A)(1) and (2), (D); R.C. 2901.22(B); *Dunkin*, 2005-Ohio-3371, at ¶ 16-18. *Lias v. Beekman*, 10th Dist. No. 06AP-1134, 2007-Ohio-5737, ¶ 14, quoting *Jenkins* at ¶ 16 (" 'Purpose or intent to cause physical harm or mental distress is not required. It is enough that the person acted knowingly.' "). Therefore, appellant's assignments of error challenging the sufficiency of the evidence to support the CPO lack merit.

{¶ 53} Accordingly, appellant's seventh, eighth, and tenth assignments of error are overruled.

**F. Appellant's Ninth Assignment of Error**

{¶ 54} In her ninth assignment of error, appellant again contends the trial court erred issuing a CPO without sufficient evidence. Under this assignment of error, appellant argues that appellee's contention that she is a paranoid schizophrenic is untrue and should not have been considered by the trial court without the presentation of medical records.

{¶ 55} In this case, the parties presented conflicting testimony regarding whether appellant has paranoid schizophrenia. Neither party presented medical records. However, there is no record evidence the trial court based its decision on appellant's alleged psychological condition. As demonstrated in the seventh, eighth, and tenth assignments of error above, the record of this case contains sufficient evidence to demonstrate appellant engaged in a pattern of conduct she knew would probably cause appellee and C.W. mental

distress for purposes of R.C. 2903.211. It is, therefore, not clear how the argument appellant presents here would result in the assignment of error as written, pertaining to sufficiency of the evidence, being sustained. App.R. 12(A)(1)(b). Regardless, because appellant presented no legal authority to support this assignment of error, we find appellant has not demonstrated error on appeal. *Sims*, 2016-Ohio-4763, at ¶ 11; *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34; App.R. 16(A)(7); *State v. Smith*, 9th Dist. No. 15AP0001n, 2017-Ohio-359, ¶ 22 (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf).

{¶ 56} Accordingly, appellant's ninth assignment of error is overruled.

### G. Appellant's Eleventh Assignment of Error

{¶ 57} Appellant's eleventh assignment of error contends the trial court abused its discretion by issuing a CPO for the purpose of preventing appellant from purchasing the house next to appellee's residence. In support of her assignment of error, appellant cites to what we presume to be R.C. 3113.31(E)(5) for the proposition that a CPO cannot affect title to real property and three cases—*Darden v. Fambrough*, 8th Dist. No. 99730, 2013-Ohio-5583, ¶ 2; *Chandler v. Dunn Hardware, Inc.*, 168 Ohio App.3d 496, 2006-Ohio-4376, ¶ 23 (8th Dist.); and *In re Marriage of Muhammad*, 153 Wash.2d 795, 805 (2005)—essentially for the proposition that CPOs should not be used as tactics during employment disputes.

{¶ 58} R.C. 3113.31(E)(5) provides that "[n]o protection order issued or consent agreement approved under this section shall in any manner affect title to any real property." It is undisputed that at the time of the CPO hearing, appellant did not own the property next to appellee's residence, was not in contract to buy that property, or otherwise had any right to the property in question. Appellant provides no authority applying R.C. 3113.31(E)(5) in these or similar circumstances to prevent the issuance of a CPO. As a result, appellant has not met her burden to demonstrate error on appeal in this regard. *Sims* at ¶ 11; App.R. 12(A)(2) and 16(A)(7); *Smith* at ¶ 22.

{¶ 59} Furthermore, the record in this case clearly does not implicate that a CPO was improperly used within the context of an employment dispute. We find appellant's argument in this regard to be against the record and to lack merit.

{¶ 60} Accordingly, appellant's eleventh assignment of error is overruled.

### H.  Appellant's Fourth and Sixth Assignments of Error

{¶ 61}  Appellant's fourth and sixth assignments of error challenge certain conditions imposed in the CPO as unsupported by the evidence.  As provided previously, the scope and duration of a CPO is within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the decision was arbitrary, unconscionable, or unreasonable.  *Campbell*, 2010-Ohio-2909, at ¶ 11; *T.S.*, 2018-Ohio-4987, at ¶ 27.

{¶ 62}  In her fourth assignment of error, appellant contends the trial court abused its discretion by preventing her from owning or carrying a firearm.  She contends she does not own a gun, and the evidence shows she never made any violent threats, let alone with a gun.

{¶ 63}  Appellant cites to *Lerner v. Giolekas*, 8th Dist. No. 102768, 2016-Ohio-696, and *Boals v. Miller*, 5th Dist. No. 10-COA-039, 2011-Ohio-1470, in support of her assignment of error.  In *Lerner*, after vacating a protection order and ordering a new hearing, the Eighth District Court of Appeals held that should the trial court issue another protection order on remand, "there must be competent, credible evidence that prohibiting [the petitioner] from having firearms or weapons bears a sufficient nexus to the conduct that the trial court is attempting to prevent."  (Citation omitted.)  *Lerner* at ¶ 52.  In *Boals*, the Fifth District Court of Appeals found the trial court abused its discretion when it prohibited the respondent from possessing firearms because the evidence in the record does not support the restriction where the protection order was based on the petitioner's demonstration of a reasonable fear of imminent physical harm, and no record evidence showed the respondent threatened the petitioner with physical harm with a deadly weapon.

{¶ 64}  We find *Boals*—a case based on the fear of imminent physical harm, rather than a case based on mental distress caused by stalking behavior—to be factually distinguishable from the case at hand.  Moreover, appellant has not demonstrated the restriction is unrelated to this particular CPO on the record of this case.  In appellee's affidavit in support of the ex parte CPO, in addition to discussing appellant's telephone harassment, stalking, and trespassing for years, her untreated mental condition, and veiled threats she makes to C.W., he states, "[i]n the past [appellant] has talked about getting a gun."  (Addendum to Petition for Civil Protection Order at 1.)  In C.W.'s affidavit provided as an exhibit at the hearing, C.W. avers: "I can remember she left voicemails a few years ago

talking about how she was thinking of getting a gun. More recently she left my husband text messages stating that she had gotten a pellet rifle and was going to 'get a hunting license.' " (Aff. at 3.) In an email provided as an exhibit, appellant states she received a tactical rifle from Amazon and that Amazon did not know who it belonged to and to keep it. A text message from appellant to appellee that day urges appellant to call her because she received an "M4 by mistake" and asking him if it is real. (Mar. 17, 2017 Text Message at 1.) About one month later, appellant texts, "I learned how to kill raccoons with a pellet rifle. Amazon hasn't called back so I'm opening that M4 and getting a raccoon license." (June 25, 2017 Text Message at 1.) At trial, appellee testified appellant had a "122 Lancer Tactical," which he described as a 22-caliber pellet rifle capable of killing small game. (Tr. at 39.) The protection order ultimately proscribed: "RESPONDENT SHALL NOT POSSESS, USE, CARRY, OR OBTAIN ANY DEADLY WEAPON at any time while the Order remains in effect."[3] (Emphasis sic.) (Order of Protection at 3.)

{¶ 65} Having considered the evidence presented regarding appellant's expressed desire to obtain a gun within the context of the entire record and the protection order issued in this case, we cannot say the trial court's decision to impose a restriction on appellant against possessing, using, carrying, or obtaining any deadly weapon was arbitrary, unconscionable, or unreasonable. Therefore, the trial court has not abused its discretion, and we will not reverse its decision in this regard. *Campbell* at ¶ 11; *T.S.* at ¶ 27.

{¶ 66} In her sixth assignment of error, appellant contends the trial court erred in issuing the CPO for five years. She contends her serious health condition is a mitigating circumstance that would warrant consideration of a duration of less than five years.

{¶ 67} Taking into consideration appellant's long pattern of conduct toward appellee and testimony expressing her unwillingness to stop contacting appellee in the future, we cannot conclude the trial court's decision to issue a CPO for a period of five years was unreasonable, arbitrary, or unconscionable. *Lias*, 2007-Ohio-5737, at ¶ 36 (finding trial court did not abuse its discretion in setting a five-year duration of a protection order where the record showed an extensive pattern of unwanted conduct with the petitioner).

---

[3] Because no specific weapons were indicated for appellant to turn over to law enforcement, the trial court apparently did not view the pellet gun referenced in the record as a deadly weapon or appellant's possession of it as the basis for imposing the restriction.

Therefore, on this record, the trial court's decision to issue a CPO for a period of five years was within its discretion and within the authority of the court.

{¶ 68} Accordingly, appellant's fourth and sixth assignments of error are overruled.

## V. CONCLUSION

{¶ 69} Having overruled appellant's eleven assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

KLATT, P.J., and DORRIAN, J., concur.

_____