[Cite as *State v. Vargas*, 2013-Ohio-4281.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     12CA010195 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOSE R. VARGAS | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.     11CR082399 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2013

HENSAL, Judge.

{¶1}    Defendant-Appellant, Jose R. Vargas, appeals from his conviction in the Lorain County Court of Common Pleas.  For the following reasons, this Court affirms.

I.

{¶2}    On March 9, 2011, the Grand Jury indicted Vargas on one count of gross sexual imposition in violation of Revised Code Section 2907.05(A)(4).  Vargas pleaded not guilty, and proceeded to a bench trial.  The trial court found him guilty and sentenced him to three years of community control, a $2,000 fine, and classified him as a Tier II sex offender.

{¶3}    Vargas filed a timely appeal of his conviction.  His counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that there were no appealable issues, and moved to withdraw as counsel.  This Court determined that there were arguable issues that could be raised on appeal, granted counsel's motion to withdraw, and appointed new counsel on

Vargas's behalf. Vargas's new counsel has raised three assignments of error for our review. This Court rearranges his assignments of error to facilitate our review.

II.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN DENYING VARGAS' (SIC) MOTION FOR JUDGMENT OF ACQUITTAL AS THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE OF GUILT.

{¶4} In his third assignment of error, Vargas argues that the trial court erred in failing to grant his Criminal Rule 29 motion. This Court disagrees.

{¶5} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Slevin*, 9th Dist. Summit No. 25956, 2012-Ohio-2043, ¶ 15. "Whether the evidence is legally sufficient to sustain a verdict is a question of law" that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The test for sufficiency requires a determination of whether the State has met its burden of production at trial." *State v. Collmar*, 9th Dist. Summit No. 26496, 2013-Ohio-1766, ¶ 7.

{¶6} Vargas was convicted of violating Revised Code Section 2907.05(A)(4), which provides that:

No person shall have sexual contact with another, not the spouse of the offender; [or] cause another, not the spouse of the offender, to have sexual contact with the offender * * * when any of the following applies:

* * *

The other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person.

"Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). Specifically, Vargas argues that the State failed to present any evidence that his physical contact with the victim was done for the purpose of sexual arousal or gratification.

{¶7} The victim, N.B., is the granddaughter of Vargas's long-time "significant other." N.B. testified that she called Vargas "abuelo," which is Spanish for "grandpa." N.B. visited with her grandparents every two weeks and stayed the weekend with them overnight once per month. N.B. testified that she "would have fun" when she visited her grandparents.

{¶8} N.B. testified that she arrived on a Friday night in early October 2010 to spend the weekend with her grandparents. She was 11 years old at the time. According to N.B., nothing "out of the ordinary" happened that night and she had a good time. On Saturday, N.B. went with her grandparents to run errands. The victim testified that her grandmother went into a store, while she and Vargas remained in the car. Vargas reached over the seat and started tickling her stomach. According to N.B., he reached under her jacket and t-shirt to touch her skin as he was tickling her. Vargas then inserted his finger under the waistband of her pants. N.B. slapped his hand away and told him to stop. The victim testified that Vargas then told her to open her legs, which she refused to do. As her grandmother was returning to the car, Vargas said, "Shh. Don't tell grandma anything." N.B. testified that she felt very uncomfortable and "knew it wasn't

really right for him to be doing it," but that she did not tell her grandmother because she was "trying to process everything" and figure out "why he was doing this." Vargas had never done anything like that before or otherwise made her feel uncomfortable according to N.B.

{¶9} That night, N.B. went to tell Vargas that dinner was ready. She testified that he opened his arms for a hug and embraced her. According to N.B., the hug lasted longer than usual. She stated that Vargas gave her two long kisses on each side of her neck wherein she could feel his saliva on her skin. N.B. felt very uncomfortable and testified that this was not normally how he kissed her.

{¶10} Later on in the evening, as N.B. lay on her grandparents' bed waiting for her grandmother, the victim testified that Vargas joined her on the bed and they tickled each other. N.B. stated that Vargas stuck his tongue in her ear. According to N.B., this was not something he had done before, and it made her feel "[v]ery uncomfortable" and "disgusted." The victim went to her room and remained there.

{¶11} N.B. testified that that same evening, as Vargas was hugging her, he turned her around so that her buttocks were pressed to his pelvic area. He put one hand on her stomach, the other on her chest, and held her tight. Vargas used his hand that was on her stomach to push her closer to the front of his body. He then asked her if she "liked it," to which N.B. replied, "No." N.B. testified that she struggled and got free. This incident also made her feel uncomfortable.

{¶12} "In the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer a purpose of sexual arousal or gratification from the type, nature and circumstances of the contact, along with the personality of the defendant." *State v. Edwards*, 9th Dist. Lorain No. 12CA010274, 2013-Ohio-3068, ¶ 10, quoting *State v. Antoline*, 9th Dist. Lorain No. 02CA008100, 2003-Ohio-1130, ¶ 64. "'From these facts the trier of facts may infer what the

defendant's motivation was in making the physical contact with the victim.'" *Id*., quoting *State v. Cobb*, 81 Ohio App.3d 179, 185 (9th Dist.1991).

{¶13} N.B. testified that Vargas asked her if she "liked it" when her buttocks were pressed up against his pelvic area. N.B. further testified that all the incidents made her feel uncomfortable and that she knew what Vargas was doing was "wrong" and "wasn't really right." Accordingly, the trier of fact could reasonably infer from her testimony, if believed, that Vargas's conduct was done for his sexual arousal or gratification.

{¶14} Viewing the evidence in a light most favorable to the State, this Court concludes that there was sufficient evidence from which any rational trier of fact could have found that the prosecution proved beyond a reasonable doubt that Vargas committed the offense of gross sexual imposition. N.B. testified that the incidents occurred in October 2010 when she was 11 years old. Further, her testimony, if believed, would have demonstrated that Vargas had sexual contact with her. Vargas's third assignment of error is overruled.

ASSIGNMENT OF ERROR II

VARGAS' [SIC] CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} Vargas argues in his second assignment of error that his conviction is against the manifest weight of the evidence. We do not agree.

{¶16} To determine whether Vargas's conviction was against the manifest weight of the evidence, this Court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340, (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶17} Vargas challenges the trial court's finding that his alleged act of positioning the victim's buttocks to his pelvic area constituted gross sexual imposition. He argues that there was no evidence that he was "grinding" against the victim, and further maintains that, within a familial relationship, "[i]t certainly cannot be criminal, even if unwanted, for someone to hug, even tightly and even uncomfortably, someone in that particular situation."

{¶18} N.B.'s mother testified that approximately 35 to 40 minutes after she picked N.B. up from her grandparents' home on Sunday, she told her that she did not love her grandpa anymore "[b]ecause he tried to touch me." According to the victim's mother, N.B. told her about the incidents that occurred that weekend. She described N.B. as "upset, but not so much as disappointed. * * * [S]he was very disappointed and very determined that she would just not go over there anymore." After telling her mother what happened, N.B. "broke down and started crying." The victim and her mother reported the incidents that night to the police. Prior to that weekend, N.B.'s mother testified that her daughter loved visiting her grandparents and looked forward to going to their home.

{¶19} Vargas presented the testimony of N.B.'s grandmother, his daughter, and his daughter's boyfriend. N.B.'s grandmother testified that N.B. never mentioned anything about these incidents to her. Vargas's daughter testified that she talked to N.B. that weekend, but that

N.B. never mentioned anything about these incidents to her either. According to Vargas's daughter, her father never did anything "inappropriate" to her or her sister. The boyfriend testified that he was at the house the day of the incidents, but that nothing usual happened.

{¶20} Vargas testified in his own defense at trial. He denied that any of the incidents occurred. Vargas further testified that N.B. made up the allegations, but that he does not know why she would do so.

{¶21} When pronouncing its verdict, the trial court found that Vargas "grabbed [N.B.] around the waist and pull[ed] her towards him so that her rear was lodged tightly in his groin area * * *." Vargas argues that "there was no testimony that anyone's rear was lodged tightly into Mr. Vargas' (sic) groin area." Vargas's argument rests purely on semantics, however, as the trial court used the word "groin" whereas the victim testified that her buttocks were touching his "pelvic area."

{¶22} While Vargas argues in his brief that this type of hug within the context of a grandfather-granddaughter relationship does not constitute gross sexual imposition, he denied at trial that any of the touching, including the tickling, the hug and the kisses, ever occurred. He denied that he had physical contact in any way with N.B., much less that it was innocent or incidental to their relationship.

{¶23} After a careful review of the record, this Court concludes that the trial court did not lose its way when it determined that Vargas's act of pressing N.B.'s buttocks against his pelvic area, together with N.B.'s testimony regarding whether or not she "liked" to be placed in that position, constituted gross sexual imposition. The trial court specifically found that N.B.'s testimony was credible. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. Frazier*, 9th Dist. Summit No. 25654,

2012-Ohio-790, ¶ 56, quoting *State v. Jackson*, 86 Ohio App.3d 29, 32 (4th Dist.1993). "This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witnesses' testimony over the testimony of others." *State v. Brown*, 9th Dist. Wayne No. 11CA0054, 2013-Ohio-2945, ¶ 42. Accordingly, Vargas's second assignment of error is overruled.

ASSIGNMENT OF ERROR I

THE TRIAL COURT'S DETERMINATION OF GUILT ON AN OFFENSE FOR WHICH VARGAS WAS NOT INDICTED VIOLATED HIS RIGHT TO A GRAND JURY INDICTMENT.

{¶24} In his first assignment of error, Vargas argues that he was convicted under a subsection of the statute different from what was listed on his indictment. This Court disagrees.

{¶25} The Ohio Constitution necessitates that, except in certain cases, a defendant "held to answer for a capital, or otherwise infamous crime" has the right to a grand jury indictment. Ohio Constitution, Article I, Section 10. Criminal Rule 7(A) further provides that all felonies, other than those that may incur a death sentence or life imprisonment, "shall be prosecuted by indictment" unless the defendant waives the indictment. "The indictment shall * * * contain a statement that the defendant has committed a public offense specified in the indictment. * * * Each count of the indictment * * * shall state the numerical designation of the statute that the defendant is alleged to have violated." Crim.R. 7(B).

{¶26} N.B. testified that at the time of trial she was 12 years old and that her birthdate was September 7, 1999. The victim's mother also testified to the same information. The victim was questioned about incidents that occurred over a period of three days in October 2010. N.B. would have been 11 years old at that time.

**{¶27}** The trial court, when pronouncing its verdict, stated that Vargas's testimony about the fact that N.B. had an opportunity to go to the movies with a relative, but instead chose to spend the day with her grandparents, was important. It stated that:

> Notwithstanding the opportunity to leave for the afternoon and go with her [relative] and her [relative's boyfriend], which I believe would be far more attractive to the average 13-year-old than spending the day at grandma's house, she chose to spend the afternoon not at the picture show, but with her grandmother and [Vargas].

Vargas maintains that the court's comment about the "average 13-year-old" constitutes an incorrect finding of fact about the age of the victim, which is one of the necessary elements of the offense pursuant to the subsection of the statute he was charged under.

**{¶28}** Vargas also challenges the trial court's statement that appears to contemplate a different subsection of the gross sexual imposition statute. The trial court stated that:

> I find that the third incident that occurred here, where Mr. Vargas was alleged to have grabbed her around the waist and pull her towards him so that her rear was lodged tightly in his groin area, the Court finds that that * * * particular maneuver was done for the sexual gratification of the defendant in an effort to seduce, and that *the defendant purposely compelled the victim to submit to that by force.*

(Emphasis added.) While Vargas was indicted under Revised Code Section 2907.05(A)(4), subsection (A)(1) of the same statute defines gross sexual imposition as occurring when "[t]he offender purposely compels the other person * * * to submit by force or threat of force."

**{¶29}** Vargas argues that the incorrect "finding[]" that the victim was 13 years old at the time of the incident, coupled with the finding that he "purposely compelled the victim to submit * * * by force," demonstrates that the trial court convicted him under Section 2907.05(A)(1) rather than Section 2907.05(A)(4), which is the subsection under which he was indicted.

**{¶30}** Our review of the record does not support Vargas's argument that the trial court made an incorrect finding that the victim was 13 years old. There was neither direct testimony at

trial that N.B. was 13 years old nor indirect testimony or evidence from which the court could have drawn such a conclusion. It is clear from our review of the record and the context of the statement that the trial court was making a generic statement about the reticence of children of that general age group to willingly choose to spend time with their grandparents over the opportunity to do more fun things like going to the movies. It is equally clear from the context of the statement that the trial court thought that the fact that N.B. willingly chose to spend time with her grandparents rather than go to the movies, and then suddenly refused to even go back to their home, was an important fact that weighed in favor of the victim's credibility.

{¶31} Further, the judgment entry of his conviction stated that the "Defendant [was] found guilty of gross sexual imposition, R.C. 2907.05(A)(4), a third degree felony, as charged in the indictment." "The Ohio Supreme Court has 'repeatedly stated that a court speaks exclusively through its journal entries' not oral pronouncements." *State v. Dowey*, 9th Dist. Summit No. 25963, 2012-Ohio-4915, ¶ 8, quoting *In re Guardianship of Hollins*, 114 Ohio St.3d 434, 2007-Ohio-4555, ¶ 30. The trial court's judgment entry finds Vargas guilty of the offense pursuant to the subsection of the statute under which he was indicted. Accordingly, to the extent that the court misspoke when it pronounced its verdict, its error was harmless. Crim.R. 52(A); *Dowey* at ¶ 8. Vargas's first assignment of error is overruled.

## II.

{¶32} Vargas's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

MICHAEL STEPANIK, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.