[Cite as *State v. Sims*, 2016-Ohio-4763.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 14AP-1025 |
| v. | : | (C.P.C. No. 12CR10-5293) |
| Deborah Sims, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 30, 2016

**On brief:** *Michael DeWine*, Attorney General, *Kristin S. Pe* and *Nathan T. Smith*, for appellee. **Argued:** *Kristin S. Pe.*

**On brief:** *Yeura R. Venters*, Public Defender, and *John W. Keeling*, for appellant. **Argued:** *John W. Keeling.*

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Deborah Sims, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.

I. **Factual and Procedural Background**

{¶ 2} On October 16, 2012, a Franklin County Grand Jury indicted appellant with a single count of theft by deception in violation of R.C. 2913.02(A)(3). The indictment alleged that appellant, a Medicaid in-home service provider, billed for services that she did not perform between 2010 and 2012 in an amount greater than $7,500 but less than $150,000, making the charge a felony of the fourth degree. Appellant entered a not guilty

plea and proceeded to trial.  Appellant waived her right to a jury trial and chose to be tried to the trial court.

{¶ 3}   At trial, Dorothy Bolding, a Medicaid recipient, testified that appellant was scheduled to come to her home seven days a week for three hours each day to provide her with home services.  Bolding testified that since 2011, appellant showed up at her house only two to three times a week.  (Tr. Vol. 1 at 51.)  She would also sometimes bring other people to her house when she did come, including relatives and other clients.  (Tr. Vol. 1 at 56.)  Another Medicaid recipient, Argene Culpepper, testified that appellant also provided him with home services in 2011.  She was supposed to come to his house five days a week for four hours each day.  (Tr. Vol. 2 at 162.)  Culpepper testified, however, that for the last two months appellant provided him with home care, she started to have some personal problems[1] which caused her to show up late at his house or other times not show up at all.  (Tr. Vol. 2 at 165-66.)  Latonya Hall, who lived with Culpepper during this time, also testified that appellant started failing to show up or not staying for the entire time for the last couple of months she provided him care.  She testified that she could not remember appellant coming for the last month she was supposed to provide services at Culpepper's house and that if she did, it was "maybe once or twice."  (Tr. Vol. 2 at 177.)

{¶ 4}   Last, the state called Special Agent Supervisor Jonathan Banks, who investigates Medicaid fraud for the state of Ohio.  Agent Banks investigated the fraud claims against appellant.   During his investigation, appellant provided him with timesheets that she submitted on a regular basis to receive payment for her services.  Agent Banks analyzed those timesheets to look for double billing of service provision.[2]  He also looked for days which appellant claimed to have worked for Bolding and Culpepper but, based on their testimony, she did not come to their house to provide them with services.  Specifically, he relied on Bolding's testimony that appellant only showed up to her house three times a week and, accordingly, that she did not show up for the four other days of the week.  Thus, he concluded that although appellant billed for seven days a week, four of those days were improperly billed because she did not provide services on

---

[1] Appellant is Culpepper's aunt.

[2]  Agent Banks discovered 30 or so instances of appellant billing two people at the same time, contrary to Medicaid provisions.  It appears, however, that those billings were not part of the theft case against appellant.

those days. Similarly, in regard to Culpepper, Agent Banks looked at the last month appellant was supposedly providing him services because Ms. Hall testified that appellant did not work that month. He concluded that any billing in that last month was for services that were not provided. Agent Banks calculated a total of $11,516 for services that appellant billed for and received payment, but did not actually perform from 2010 through 2012.

{¶ 5} The trial court found appellant guilty of theft as charged and placed her on community control for a period of five years.

## II. The Appeal

{¶ 6} Appellant appeals her conviction and assigns the following errors:

> [1.] The defendant was deprived of her right to a fair trial and due process of law when an investigator was allowed to express his belief that certain witnesses were telling the truth and then to give his opinion that the defendant was guilty of theft based upon his belief that the other witnesses were being truthful and upon his own evaluation of the evidence.

> [2.] The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a finding of guilt beyond a reasonable doubt.

> [3.] The trial court erred when it entered judgment against the defendant when guilt was not established by the manifest weight of the evidence beyond a reasonable doubt.

> [4.] The state violated the defendant's Fourth, Fifth, and Sixth Amendment rights when it unlawfully ignored the warrant requirement of the Constitution and improperly seized documents from the defendant's residence by using the implied authority of state's agents and a subpoena, instead of a warrant, to obtain documents from the defendant.

> [5.] The trial court erred when it considered subsections of the theft statute, containing elements not set forth in the indictment, in its determination that the defendant was guilty of theft.

{¶ 7} For clarity, we address these assignments of error out of order.

### A. Appellant's First and Fourth Assignments of Error–Plain Error

{¶ 8} In her first assignment of error, appellant argues that the trial court erred by admitting Banks' testimony because it improperly bolstered testimony from the other witnesses and expressed an opinion on the credibility of their testimony and on the guilt of the appellant. In her fourth assignment of error, she contends that the state violated her constitutional rights when agents investigating the theft allegations came to her house and obtained documents from her pursuant to a grand jury subpoena. As a result, she argues that those documents should have been suppressed by the trial court.

{¶ 9} We address these assignments of error together because appellant has forfeited or waived them absent plain error. Appellant did not file a motion to suppress the documents she provided to the agents and also did not object to the admission of the documents at trial. Additionally, appellant did not object to Banks' testimony on any of the grounds she now raises. These failures forfeit or waive error other than plain error. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 136, citing *State v. Campbell*, 69 Ohio St.3d 38, 44 (1994) (failure to object to admission of documents at trial, as well as failing to file motion to suppress the illegally obtained evidence, waives objections to evidence other than plain error); *State v. Boone*, 10th Dist. No. 14AP-87, 2015-Ohio-2648, ¶ 35 (failure to object to testimony on grounds raised as error in appeal forfeit those grounds absent plain error).

{¶ 10} Under Crim.R. 52(B), plain errors affecting substantial rights may be noticed by an appellate court even though they were not brought to the attention of the trial court. To constitute plain error, there must be: (1) an error, i.e., a deviation from a legal rule, (2) that is plain or obvious, and (3) that affected substantial rights, i.e., affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Even if an error satisfies these prongs, appellate courts are not required to correct the error. Appellate courts retain discretion to correct plain errors. *Id.*; *State v. Litreal*, 170 Ohio App.3d 670, 2006-Ohio-5416, ¶ 12 (4th Dist.). Courts are to notice plain error under Crim .R. 52(B) " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Barnes*, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of syllabus.

{¶ 11} While appellant has only preserved plain error under Crim.R. 52(B), she does not argue the existence of plain error on appeal. The appellant bears the burden of affirmatively demonstrating error on appeal. App.R. 16(A)(7); *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34. Appellant has not met her burden.

{¶ 12} Accordingly, because appellant has failed to demonstrate plain error, we overrule her first and fourth assignments of error.

## B. Appellant's Fifth Assignment of Error—The Trial Court's Oral Finding of Guilt

{¶ 13} In this assignment of error, appellant notes that during the trial court's oral pronouncement of its finding, the trial court read the five ways that theft can be committed under R.C. 2913.02(A). The trial court stated that only the first three could apply: by deception, beyond the scope of express or implied consent, or without consent. The trial court then found appellant guilty but did not state the method of theft appellant committed. The indictment charged appellant with committing theft by deception. Appellant argues that the trial court erred by considering alternate manners of the theft offense that were not included in her indictment. We disagree.

{¶ 14} A court speaks exclusively through its journal entries, not oral pronouncements. *State v. Dowey*, 9th Dist. No. 25963, 2012-Ohio-4915, ¶ 8; *In re Guardianship of Hollins*, 114 Ohio St.3d 434, 2007-Ohio-4555, ¶ 30. Here, notwithstanding the trial court's comments, the trial court's judgment entry found appellant guilty of the theft offense for which she was indicted, i.e., theft by deception. Accordingly, to the extent that the court was not clear when it pronounced its verdict, its error was harmless. *State v. Vargas*, 9th Dist. No. 12CA010195, 2013-Ohio-4281, ¶ 28-31 (trial court's comment appearing to contemplate conviction for a different subsection of criminal statute was harmless where judgment entry found defendant guilty of offense as indicted). We overrule appellant's fifth assignment of error.

## C. Appellant's Second and Third Assignments of Error—The Sufficiency and Manifest Weight of the Evidence

{¶ 15} In these assignments of error, appellant contends that her conviction is not supported by sufficient evidence and is also against the manifest weight of the evidence. Although sufficiency and manifest weight are different legal concepts, manifest weight

may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.* In that regard, we first examine whether appellant's conviction is supported by the manifest weight of the evidence. *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, ¶ 46 (10th Dist.).

{¶ 16} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *Thompkins* at 387. When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

{¶ 17} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great deference to the jury's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55. *See also State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus (credibility determinations are primarily for the trier of fact).

{¶ 18} Appellant argues that her conviction is against the manifest weight of the evidence because the testimony used to support Banks' conclusions that she committed theft were inconsistent and not credible. Specifically, she argues that Bolding's testimony is not credible because she was an elderly stroke victim who likely had memory problems. Appellant also argues that Culpepper's testimony was inconsistent with Hall's testimony regarding when appellant worked at his house for the last month. We find these arguments unpersuasive.

{¶ 19} The trial court, as the trier of fact, obviously chose to believe these witnesses and Banks' conclusions. That is a decision within the province of the trier of fact. *State v. Berry*, 10th Dist. No. 10AP-1187, 2011-Ohio-6452, ¶ 18. The trial court was aware of the information regarding the witnesses' credibility and was in the best position to weigh and determine credibility based on that information. *State v. Green*, 10th Dist. No. 11AP-526, 2012-Ohio-950, ¶ 11. Appellant's arguments do not render the witnesses' testimony not credible as a matter of law. *State v. Peterson*, 10th Dist. No. 12AP-646, 2013-Ohio-1807, ¶ 5. Nor do we see anything in these witnesses' testimony that would make it so incredible as to render appellant's conviction against the manifest weight of the evidence. *Green*, citing *State v. Thompson*, 10th Dist. No. 07AP-491, 2008-Ohio-2017, ¶ 35. Lastly, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence is presented at trial. *State v. Hassan*, 10th Dist. No. 12AP-626, 2013-Ohio-2071, ¶ 24.

{¶ 20} In light of the evidence presented at trial, the trial court did not lose its way or create a manifest miscarriage of justice. Accordingly, appellant's theft conviction is not against the manifest weight of the evidence. That conclusion is also dispositive of her claim that her conviction was not supported by sufficient evidence. *Gravely*. Accordingly, we overrule appellant's second and third assignments of error.

## III. Conclusion

{¶ 21} Having overruled appellant's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., and BRUNNER, J., concur.