[Cite as *Schumacher v. Patel*, 2023-Ohio-4623.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Barbara Schumacher, Individually and as Executor of the Estate of Kenneth Schumacher, deceased,  :

: 

Plaintiff-Appellant,  :

No. 23AP-254
(C.P.C. No. 21CV-2941)

v.  :

(ACCELERATED CALENDAR)

Dr. Rashmi Patel et al.,  :

Defendants-Appellees.  :

---

D E C I S I O N

Rendered on December 19, 2023

---

**On brief:** *DuPont & Blumenstiel, LLC*, and *Braden A. Blumenstiel*, for appellant. **Argued:** *Braden A. Blumenstiel.*

**On brief:** *Anspach Law*, and *Robert M. Anspach*, for appellee Heartland of Westerville. **Argued** *Robert M. Anspach.*

---

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Plaintiff-appellant, Barbara Schumacher, Individually and as Executor of the Estate of Kenneth Schumacher, deceased ("Barbara"), appeals from a judgment of the Franklin County Court of Common Pleas granting the motion for summary judgment filed by defendant-appellee, Heartland of Westerville ("Heartland"), as to Barbara's medical treatment related claims arising from the death of her husband, Kenneth Schumacher ("Kenneth"). For the reasons that follow, we affirm.

**I. Facts and Procedural History**

{¶ 2} The following facts are undisputed by the parties unless otherwise indicated. Issues involving Kenneth's left adrenal gland led him to seek medical intervention in early 2017. Kenneth underwent a CT guided left renal cryoablation to remove a cancerous mass on his left adrenal gland in February 2017, and, although that initial surgery appeared to be beneficial, an April 2017 CT scan revealed an enlarging left adrenal mass. Kenneth met with Dr. Rashmi Patel and they determined Kenneth would undergo an open left adrenalectomy on his left adrenal gland to address the mass. Dr. Patel performed the surgery on May 11, 2017 at Mt. Carmel East Hospital ("Mt. Carmel"). The post-operative pathology returned negative for metastatic renal cell carcinoma.

{¶ 3} Kenneth's health deteriorated following the May 2017 surgery and the incision would not heal. He initially remained at Mt. Carmel for post-operative care. There, he underwent a "CT-guided left retroperitoneal abscess drain placement" on May 23, 2017, a "Wound VAC" on May 26, 2017 to promote wound healing, and medical records indicated he was being treated for post-operative sepsis. (Heartland Feb. 1, 2023 Mot. for Summ. Jgmt. at 4.) According to Barbara, the Wound VAC administered by Mt. Carmel malfunctioned due to a lost seal.

{¶ 4} On June 2, 2017, Kenneth was transferred to Heartland, an extended care facility. He arrived at 9:00 p.m. The parties do not dispute that a Wound VAC was not initially available to treat Kenneth upon his arrival but diverge on the particulars of when the Wound VAC became available, why it was not promptly administered, and when it was ultimately administered. Barbara contends the evidence shows no Wound VAC was available on June 3rd and that one was not placed on Kenneth until approximately 2:00 a.m. on June 5, 2017. Heartland contends the Wound VAC arrived at Heartland on June 3rd but Kenneth and his family deferred its application until stronger pain medication could be ordered, the receipt of pain medication was delayed due to unknown issues, and that the Wound VAC was administered June 4, 2017.

{¶ 5} The parties do agree the evidence shows Kenneth received antibiotics at 2:08 p.m. the day after his arrival, June 3, 2017. Heartland contends there is no evidence to show he missed a dose or, in other words, that the absence of immediate antibiotics upon Kenneth's arrival to Heartland caused any harm.

**{¶ 6}** After spending approximately three days at Heartland, on June 5, 2017, Kenneth's condition worsened to the point he had to be transferred to St. Ann's Hospital. According to Heartland, Kenneth was treated at St. Ann's for approximately the next six weeks—from June 5 to July 15, 2017—and Kenneth's condition greatly improved. On July 15, 2017, he was discharged to another facility but "quickly returned" to St. Ann's. (Appellee's Brief at 5.) Kenneth ultimately returned home and passed away on July 31, 2017, nearly two months after his stay at Heartland. The cause of death listed on the death certificate is "[s]epsis" as a consequence of a "non-healing post-op wound, malnutrition and VRE infection." (Mot. for Summ. Jgmt. at 5, citing Ex. E Death Certificate.)

**{¶ 7}** According to the trial court decision and the complaint, on November 5, 2018, Barbara, individually and as executor of Kenneth's estate, filed a complaint against Heartland, Dr. Rashmi Patel, Mt. Carmel, and John Doe defendants and then voluntarily dismissed the complaint under Civ.R. 41(A). She refiled the complaint on May 11, 2021. Pertinent to Heartland, Barbara contended Heartland breached the applicable medical standard of care by failing to have a functional Wound VAC for a period of time while Kenneth was in its care and through the doctrine of respondeat superior, and this breach ultimately resulted in the failure to appropriately treat Kenneth's infected abdominal wound and led to the development of sepsis—the primary cause of his death. The complaint additionally alleges Heartland was delayed in obtaining the necessary antibiotic medications to fight Kenneth's infection and this delay also caused Kenneth's health to deteriorate. Barbara also brought a claim against Heartland under R.C. 2125.02 contending Heartland's breach of the standard of care deprived her, as spouse, and Kenneth's next of kin of companionship, assistance, attention, and counsel as a result of his death and caused them to suffer severe mental and emotional anguish and incur medical and funeral expenses. Attached to the complaint is the "Affidavit of Merit of Ralph Emerson Duncan, M.D.," signed November 5, 2018, along with his curriculum vitae. (Attachments 1 and A to Compl., hereinafter "Nov. 5, 2018 Duncan affidavit.")

**{¶ 8}** Heartland filed an answer and a motion for judgment on the pleadings that challenged the sufficiency of the Nov. 5, 2018 Duncan affidavit as an "affidavit of merit" required by Civ.R. 10(D)(2) to institute a medical claim. The trial court ultimately granted, in part, Heartland's motion for judgment on the pleadings. In doing so, it

concluded Barbara's claims against Heartland are "medical claims" as defined by R.C. 2305.113(E)(3), Barbara had not produced a proper Civ.R. 10(D)(2)(a) affidavit of merit, and Barbara was permitted under Civ.R. 10(D)(2)(e) to attempt to cure the deficiency. (May 2, 2022 Decision at 5.) Barbara submitted several more affidavits from Dr. Duncan to attempt to establish a sufficient affidavit of merit to support her complaint. She additionally filed a letter from Dr. Stephen Sloan, M.D. along with his curriculum vitae.

{¶ 9} On September 27, 2022, the trial court filed an amended case schedule setting November 18, 2022 as the expert report deadline. Barbara filed a notice that all counsel of record had been served with "the expert reports, CVs, and fee schedules of expert witnesses Dr. Ralph Duncan and Dr. Stephen Sloan." (Nov. 18, 2022 Notice at 1.) The appellate record does not show which proposed expert reports were served on defense counsel at that time.

{¶ 10} On February 1, 2023, Heartland filed the motion for summary judgment at issue in this case. Heartland argued Barbara failed to sufficiently support her medical claims against Heartland with appropriate expert evidence. First, Heartland contended the separate affidavits authored by Dr. Duncan in support of Barbara's complaint are affidavits of merit that cannot be considered as evidence in determination of the motion for summary judgment. Second, citing an expert report from Dr. Duncan dated October 18, 2018 (Ex. F to Mot. for Summ. Jgmt.) and addendum dated October 25, 2018 (Ex. G to Mot. for Summ. Jgmt.) as well as the Dr. Sloan letter dated February 27, 2022 (Ex. 7 to Mot. for Summ. Jgmt.), Heartland argued in pertinent part: (1) Barbara failed to establish the standard of care Heartland owed to Kenneth with regard to post-operative care, and (2) Barbara failed to establish that any alleged breach by Heartland was the direct and proximate result of Kenneth's death. It is unclear whether Heartland received the October 18, 2018 Duncan report and October 25, 2018 addendum in the instant round of litigation or as a part of the originally filed case. Heartland's motion for summary judgment and attorney affidavit does not state when Barbara "provided" those reports. (Mot. for Summ. Jgmt. at 2, fn. 3; attached Anspach Aff. at ¶ 9-10.)

{¶ 11} Barbara filed a memorandum contra Heartland's motion for summary judgment on March 1, 2023. In pertinent part, Barbara argued the new "expert reports" from her two qualified experts, Dr. Duncan and Dr. Sloan, demonstrate the standard of care

Heartland owed to Kenneth and the breach of that standard of care caused Kenneth's death. (Memo Contra at 4, 12.)   She additionally referenced the deposition of Dr. Patel and Kenneth's medical records to support her contention that Heartland's conduct caused Kenneth's death.  Overall, in Barbara's view:

> The medical records, Dr. Patel, and plaintiff's expert (Dr. Duncan) provide evidence that would allow a reasonable juror to conclude Heartland's breach of its duty to have a functional wound VAC and antibiotic medication available for Ken when he arrived directly and proximately resulted in a drastic deterioration in his health which required him to be transported to St. Ann's emergency room less than three days after he arrived at Heartland. By that time, Ken's infection could not be controlled, it continued to worsen, and it eventually resulted in the severe sepsis, non-healing post-op wound, malnutrition, and a VRE infection that caused his untimely death on July 31, 2017. Plaintiff has presented sufficient evidence demonstrating defendant Heartland's breach of the applicable standard of care was a direct and proximate cause of decedent Kenneth Schumacher's death.

(Memo Contra at 14.)

{¶ 12} Barbara attached to her memorandum contra as exhibits, in pertinent part, Kenneth's death certificate, medical records, deposition testimony from Dr. Patel, the February 27, 2022 Dr. Sloan letter, and four affidavits from Dr. Duncan: the initial Nov. 5, 2018 Duncan affidavit she had attached to the complaint; the August 5, 2021 supplemental Duncan affidavit; the February 28, 2022 supplemental Duncan affidavit; and the June 29, 2022 supplemental Duncan affidavit. Each affidavit signed by Dr. Duncan addressed causation in a single summary paragraph. *See* Memo Contra Ex. 14-A, Nov. 5, 2018 Duncan affidavit at ¶ 28 ("As a direct and proximate result of the breach of standard of care by Dr. Patel, Mt. Carmel and Heartland * * *, [Kenneth] experienced a wound infection and sepsis which caused his death on July 31, 2017."); Memo Contra Ex. 14-B, Aug. 5, 2021 supplemental Duncan affidavit at ¶ 30 ("As a direct and proximate result of the breach of standard of care by Heartland * * *, [Kenneth] experienced a wound infection and sepsis which ultimately causes death on July 31, 2017."); Memo Contra Ex. 14-C, Feb. 28, 2022 supplemental Duncan affidavit at ¶ 16 ("Heartland['s] * * * failure to provide Kenneth * * * with needed medical care and treatment and its breach of the applicable standard of care directly and proximately caused Ken[neth] to experience a worsening of his wound

infection and sepsis, which ultimately caused his death on July 31, 2017."); Memo Contra Ex. 14-D, June 29, 2022 supplemental Duncan affidavit at ¶ 32 ("As a direct and proximate result of the breach of the applicable standard of care by defendant Heartland * * *, Kenneth Schumacher experienced a wound infection and sepsis which caused his death on July 31, 2017."). The letter dated February 27, 2022 from Dr. Sloan is approximately two pages, not notarized, and opines Heartland's breach of the applicable standard of care for nursing home facilities by permitting Kenneth to be transferred to its facility without having an operable Wound VAC or needed antibiotic medication available for him when he was transferred. The letter does not address whether Heartland's breach of the applicable standard of care caused Kenneth's injury and death. Barbara's attorney filed an affidavit in support of the exhibits attesting to the accuracy of the copies and that the reports had been exchanged with defendants through the course of discovery.

{¶ 13} On March 8, 2023, Heartland filed a reply to Barbara's memorandum contra. Heartland reiterated that the cited affidavits of merit are, by rule, not considered evidence and are not expert reports, and even if they were considered, do not provide support for her medical claims since they do not establish the alleged breach or causation. Heartland additionally noted Barbara did not contest the deficiencies raised as to the Duncan reports from October 2018 that Heartland had attached to its motion as exhibits F and G.

{¶ 14} The trial court issued its decision granting Heartland's motion for summary judgment on April 23, 2023 after determining Barbara had not met the legal standard on summary judgment to prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by Heartland's negligence. It reasoned the four affidavits of Dr. Duncan presented by Barbara as expert reports (exhibits 14A-D) are in fact affidavits of merit that cannot be considered as evidence. It then determined that while Dr. Sloan's letter could be considered an expert medical report, he did not opine as to the probability that Heartland's breach caused Kenneth's death or injuries. The trial court further added it could not consider the medical records, death certificate, or deposition testimony of Dr. Patel to meet the legal standard. The trial court indicated the judgment to be a final appealable order and there is no just reason for delay. Barbara filed a timely appeal.

## II. Assignments of Error

{¶ 15} Barbara assigns the following two assignments of error for our review:

> [I.] The trial court erred [] by deeming the reports of Dr. Ralph Duncan to be inadmissible affidavits of merit under Civ.R. 10(D)(2) and not admissible expert reports under Civ.R. 26(B)(7) and 56(C) and failing to consider them when deciding Heartland's motion for summary judgment.
>
> [II.] The trial court erred in granting [Heartland's] motion for summary judgment.

## III. Standard of Review

{¶ 16} Appellate review of summary judgment is de novo. *MacDonald v. Authentic Invests., L.L.C.*, 10th Dist. No. 15AP-801, 2016-Ohio-4640, ¶ 22. "Under the de novo standard of review, an appellate court undertakes an independent review of the evidence without deference to the trial court's decision." *Kiser v. United Dairy Farmers*, 10th Dist. No. 22AP-539, 2023-Ohio-2136, ¶ 9, citing *Nazareth Deli L.L.C. v. John W. Dawson Ins. Inc.*, 10th Dist. No. 21AP-394, 2022-Ohio-3994, ¶ 22. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the non-moving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 17} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims. *Id.* at 293. Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by

affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Id.*; Civ.R. 56(E).

## IV. Analysis

{¶ 18} This appeal centers on whether the trial court erred in determining Barbara failed to adequately support her medical claims against Heartland with sufficient expert reports for purposes of responding to Heartland's motion for summary judgment. For context, a plaintiff pursuing a medical claim requiring an expert opinion to establish liability is subject to special requirements for both filing and supporting their claim.

{¶ 19} First, to properly plead a medical claim, the plaintiff must attach an "affidavit of merit" to the complaint relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability. Civ.R. 10(D)(2)(a). By rule, the affidavit of merit, which must be provided by an expert witness meeting the requirements of Evid.R. 702 and, if applicable, Evid.R. 601(B)(5), shall include:

> (i.) A statement that the affiant has reviewed all medical records reasonably available to the plaintiff concerning the allegations contained in the complaint;
>
> (ii.) A statement that the affiant is familiar with the applicable standard of care;
>
> (iii.) The opinion of the affiant that the standard of care was breached by one or more of the defendant to the action and that the breach caused injury to the plaintiff.

Civ.R. 10(D)(2)(a). The rule also provides a means for plaintiffs to cure defective affidavits of merit, and the ultimate failure of the plaintiff to comply with the rule results in a dismissal that operates "as a failure otherwise than on the merits." Civ.R. 10(D)(2)(d) and (e). Of particular interest to this case, the rule specifies "[a]n affidavit of merit is required to establish the adequacy of the complaint and shall not otherwise be admissible as evidence or used for purposes of impeachment." Civ.R. 10(D)(2)(d).

{¶ 20} In addition to meeting the threshold requirement of presenting proper affidavits of merit to establish the adequacy of the complaint, the plaintiff bears the burden of establishing the elements of the medical claim by a preponderance of the evidence. *Korreckt v. Ohio Health*, 10th Dist. No. 10AP-819, 2011-Ohio-3082, ¶ 11. To prevail on a medical claim where the elements of a medical malpractice claim are beyond the common

knowledge and understanding of the trier of fact, a plaintiff must demonstrate through expert testimony: (1) the applicable standard of care within the medical community, (2) the defendant breached that standard of care, and (3) the breach of the standard of care proximately caused the plaintiff's injury. *Id.* at ¶ 11-12; *Foy v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-723, 2017-Ohio-1065, ¶ 24; *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 131-32 (1976). *See also* R.C. 2305.113(E)(3) defining "medical claim." "Where the plaintiff fails to present expert testimony that [the defendant] breached the applicable standard of care and that the breach constituted the direct and proximate cause of the plaintiff's injury, a court may enter summary judgment in favor of the defendant." *Korreckt* at ¶ 12.

{¶ 21} Expert testimony to support a plaintiff's medical claim is, for the most part, limited by the scope of a properly submitted written expert report. *See* Civ.R. 26(B)(7) and Comments for July 1, 2020 Amendments. Specifically, aside from an exception for medical providers who provided medical care relevant to the case, a party may not call an expert witness to testify "unless a written expert report has been procured from the witness and provided to opposing counsel." Civ.R. 26(B)(7)(c) and (d). Moreover, that expert may not "testify or provide opinions on matters not disclosed in his or her report." Civ.R. 26(B)(7)(c). As a result, a plaintiff's failure to produce adequate expert reports to support the elements of the asserted medical claim may serve as a basis for summary judgment in favor of the defendant. *See* Civ.R. 26(B)(7)(c) and (d); *Kinasz v. Diplomat Healthcare*, 8th Dist. No. 103758, 2016-Ohio-2949, ¶ 22 ("Without an expert report, * * * and no argument that the medical malpractice claims fall under the exception to the medical expert requirement, appellant failed to satisfy her reciprocal burden of presenting evidence to demonstrate that a genuine issue of material fact exists, or that an exception to the general rule requiring expert testimony exists in this case" and, therefore the defendants were entitled to summary judgment in their favor.). To qualify as a proper expert report, the report "must disclose a complete statement of all opinions and the basis and reasons for them as to each matter on which the expert will testify" and "[i]t must also state the compensation for the expert's study or testimony." Civ.R. 26(B)(7)(c).

{¶ 22} With her first assignment of error, Barbara contends the trial court committed reversible error by determining the Duncan affidavits were inadmissible affidavits of merit under Civ.R. 10(D)(2) and not admissible expert reports under Civ.R.

26(B)(7), and 56(C) and (E).    Specifically, she contends that, in this case, the three "Subsequent Affidavit Reports" she obtained from Dr. Duncan "greatly <u>exceed</u> the requirements of Civ.R. 10(D)(2) and meet all requirements of Civ.R. 26(B)(7)" and she emphasizes that the trial court must view the evidence in the light most favorable to her as the non-moving party.  (Emphasis sic.) (Appellant's Brief at 18-19.)  Barbara adds that, when compared to Heartland's expert report and the Dr. Sloan letter, the Subsequent Affidavit Reports from Dr. Duncan must likewise be declared admissible.

{¶ 23} We disagree with Barbara.  An affidavit of merit that only includes the necessary assertions under Civ.R. 10(D)(2)(a) does not constitute evidence for consideration on summary judgment.  Civ.R. 10(D)(2)(d) ("An affidavit of merit is required to establish the adequacy of the complaint and shall not otherwise be admissible as evidence."); *White v. Summa Health Sys.*, 9th Dist. No. 24283, 2008-Ohio-6790, ¶ 22 ("[A]n affidavit of merit which includes only the bare assertions required by Civ.R. 10(D)(2)(a) can never constitute evidence of the type enunciated in Civ.R. 56(C) to support or oppose a motion for summary judgment.").

{¶ 24} As noted by Barbara, a few Ohio appellate districts have indicated that plaintiffs may, hypothetically, be able to use an affidavit of merit to oppose summary judgment if the affidavit includes sufficient information beyond the Civ.R. 10(D)(2)(a) requirements.  *See White* at ¶ 23 ("That is not to say that an affidavit of merit which includes statements beyond those required by Civ.R. 10(D)(2)(a) can never properly be used to support or oppose a motion for summary judgment."); *Babcock v. Albrecht*, 11th Dist. No. 2010-L-150, 2012-Ohio-1129, ¶ 29-44 (determining that, while the affidavit of merit complied with the minimal requirements of Civ.R. 10(D), it "did not set forth facts that would allow it to be used as an expert report," and as such, was insufficient to oppose summary judgment).

{¶ 25} However, this court has not followed *White's* hypothetical discussion on this point and has instead concluded Civ.R. 10(D)(2)(d) expressly excludes consideration of an affidavit of merit for summary judgment purposes.  *Havenar v. Melaragno*, 10th Dist. No. 21AP-336, 2022-Ohio-389.  On this issue, we stated:

> We also agree with the trial court that the Havenars did not satisfy their burden by invoking [the doctor]'s Affidavit of Merit. * * * The rule is explicit that: "An affidavit of merit is

> required to establish the adequacy of the complaint and shall not otherwise be admissible as evidence or used for purposes of impeachment." Civ.R. 10(D)(2)(d).
>
> We read the phrase "not otherwise" in that prohibition to exclude circumstances other than use in "establish[ing] the adequacy of the complaint." *See* Dictionary.com (giving the first definition of "otherwise" as "under other circumstances"). Our reading is consistent not only with common usage, but with the guidance provided by the lead opinion in *Barnard v. Turner*, *M.D.*, 10th Dist. No. 17AP-550 (May 17, 2018) (Memorandum Decision at ¶ 14): "[A] Civ.R. 10(D)(2) affidavit of merit cannot be considered [on summary judgment] because it is not admissible evidence under the express terms of the rule." *See also id.* (citing *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St.3d 621, 631 (1992) fn. 4 ["Only facts which would be admissible in evidence can be * * * relied upon by the trial court when ruling upon a motion for summary judgment"] and collecting other cases reciting that rule prohibits use of an affidavit of merit as evidence in opposition to summary judgment). The opinion in *Barnard* did note that in dicta, the Ninth District Court of Appeals in *White v. Summa Heath Sys.*, 9th Dist. No. 24283, 2008-Ohio-6790, had "left open the possibility that an affidavit of merit could be considered in opposing a motion for summary judgment if it contained facts that went beyond the bare assertions required by Civ.R. 10(D)(2)(a)," but—while finding that such a hypothetical circumstance did not exist there, as it did not in *White* but as it would here—stated bluntly that, "we cannot reconcile this part of the *White* decision with the express provision in Civ.R. 10(D)(2)(d)." *Barnard* at ¶ 15. Nor can we now. Under the plain text of the rule, the trial court properly excluded consideration of [the doctor]'s Affidavit of Merit for summary judgment purposes.

*Havenar* at ¶ 19-20. *See also Taylor v. Gazall*, 2d Dist. No. 27305, 2017-Ohio-5493, ¶ 14-16 (determining, in a case involving the defendant's alleged negligent use of a Wound VAC, that the plaintiff's argument attempting to cite, in part, an affidavit of merit to avoid summary judgment was "flawed" since the "affidavit of merit cannot be used to defend a summary judgment motion").

{¶ 26} Moreover, even if, for sake of argument, Civ.R. 10(D)(2)(d) is not a blanket prohibition on using an affidavit of merit as evidence to oppose summary judgment, none of the affidavits here meet the requirements for an expert report to support Barbara's

medical claims against Heartland. Each Duncan affidavit, which are labeled as affidavits of merit, contain only a summary statement as to causation and do not "disclose a complete statement of all opinions and *the basis and reasons for them*" as to causation. (Emphasis added.) Civ.R. 26(B)(7)(c). We further note that to qualify as an expert report, it "must also state the compensation for the expert's study or testimony," and here the issue of compensation is neither addressed in the affidavits themselves or apparent from the appellate record. Civ.R. 26(B)(7)(c); *Haworth v. Roman*, 2d Dist. No. 29687, 2023-Ohio-3816, ¶ 20 (determining the failure to disclose compensation in an affidavit of merit to be one reason the affidavit did not meet the requirements of an expert report).

{¶ 27} Finally, Barbara mentions, in a footnote, that Heartland's failure to file a motion to strike the Duncan affidavits serves as "another reason the Subsequent Affidavit Reports should have been * * * considered by the trial court." (Appellant's Brief at 21, fn. 7.) We fail to see why Heartland would move to strike the affidavits when they were submitted as affidavits of merit, presumably to meet the Civ.R. 10(D)(2) requirement in filing the complaint. Regardless, because Barbara does not provide legal authority to support this argument, she has not met her burden in demonstrating error in this regard on appeal. *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34, citing App.R. 16(A)(7) ("An appellant must support their assignments of error with an argument, which includes citation to legal authority."); *J.W. v. D.W.*, 10th Dist. No. 19AP-52, 2019-Ohio-4018, ¶ 55 (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf).

{¶ 28} Therefore, in line with these considerations, Barbara has not demonstrated the trial court erred by determining the Duncan affidavits were inadmissible Civ.R. 10(D)(2) affidavits of merit and not considering them in ruling on summary judgment. Accordingly, her first assignment of error is overruled.

{¶ 29} With her second assignment of error, Barbara contends that, either with the Duncan affidavits or without them, the trial court erred in granting summary judgment to Heartland since she presented sufficient evidence to demonstrate Heartland breached the applicable standard of care by failing to have an operable Wound VAC and antibiotic

medications available when it admitted Kenneth to its facility and that Heartland's breach directly and proximately caused Kenneth's death.

{¶ 30} At the outset, we note Barbara does not contest that Heartland met its initial burden as the moving party of informing the trial court of the basis for the summary judgment motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. Instead, Barbara challenges on appeal the trial court's failure to view the evidence she submitted as adequate to meet her reciprocal burden under Civ.R. 56 to show a genuine issue exists for trial.

{¶ 31} As previously explained, Barbara bore the burden of proving, among other elements, that Heartland's conduct caused Kenneth's injury. *Korreckt* at ¶ 11-12; *Foy* at ¶ 24; *Bruni* at 131-32. Furthermore, she was obligated to do so through an expert opinion, which gave rise to the need to provide an adequate written expert report. Civ.R. 26(B)(7)(c) and (d); *Kinasz*, 2016-Ohio-2949, at ¶ 22; *Roberts v. Ohio Permanent Med. Group, Inc.*, 76 Ohio St.3d 483, 485 (1996), citing *Shumaker v. Oliver B. Cannon & Sons, Inc.*, 28 Ohio St.3d 367 (1986) ("[T]he general rule is that the plaintiff must prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence."). For the following reasons, Barbara did not successfully defend against summary judgment in this case.

{¶ 32} First, to the extent Barbara argues Dr. Duncan's "Subsequent Affidavit[s]" (dated August 5, 2021, February 28, 2022, and June 29, 2022) satisfy her reciprocal burden on summary judgment, that argument lacks merit. (Appellant's Brief at 24.) As resolved in the first assignment of error, those affidavits were properly excluded from consideration as expert reports. Because the Civ.R. 10(D)(2) Duncan affidavits cannot serve as evidence to defend against summary judgment, Barbara's contentions in the second assignment of error premised on the Duncan affidavits necessarily fail.

{¶ 33} Second, we disagree with Barbara's view that, even without consideration of the Duncan affidavits, the record in this case contains sufficient evidence to warrant reversal of summary judgment in favor of Heartland. The Dr. Sloan letter, which the trial court accepted as an expert medical report, did not opine on causation. Regarding Dr. Patel (Kenneth's surgeon), Barbara does not explain how the trial court erred in determining Dr. Patel's deposition testimony could not be considered as medical expert testimony to

support her case, and, regardless, the testimony cited by Barbara likewise does not opine on causation as it relates to Kenneth's short stay at Heartland over two months prior to his death.  We note that Dr. Patel "d[id] not know" whether a Wound VAC and antibiotic medication could have helped any of the conditions listed on the death certificate. (Memo Contra, Ex. 18 at 123.)

{¶ 34} Finally, the October 2018 reports of Duncan, which were attached by Heartland to the motion for summary judgment as exhibits E and F, cannot be used to support Barbara's case at this juncture.  As previously noted, it is unclear when and how Heartland came to receive these reports in the instant round of litigation but, typically, filings from previously instituted actions that have been voluntarily dismissed pursuant to Civ.R. 41(A) would not be "carried over" to this case.  *Haworth*, 2023-Ohio-3816, at ¶ 17, quoting *Wilson v. Durrani*, 164 Ohio St.3d 419, 2020-Ohio-6827, ¶ 20 (declining to consider affidavit of merit filed in the previously dismissed case and explaining: "[A]nything filed in the 2019 case could not be considered in the subsequent case. * * * A suit dismissed pursuant to [Civ.R. 41(A)] is 'deemed to never have existed.'  It leaves the parties as if no action had been brought at all. * * * For the court's purposes, it is as if that case had never happened.).  Moreover, although Barbara on appeal attempts to point to exhibits E and F, she did not raise this argument to oppose summary judgment.  The trial court did not err by considering only the evidence pointed to by Barbara to support her claims, and Barbara cannot now attempt to litigate her claims based on exhibits E and F for the first time on appeal.  *See White* at ¶ 24 (because the appellant "failed to raise this issue below" he "therefore, forfeited the issue on appeal"); *Quaye v. N. Mkt. Dev. Auth., Inc.*, 10th Dist. No. 15AP-1102, 2017-Ohio-7412, ¶ 28-29 (explaining why the appellant is not entitled to change the theory of his case on appeal); *Tucker v. Leadership Academy for Math & Science of Columbus*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 20 (explaining that arguments raised for the first time on appeal are improper even under the de novo standard of review employed in appeals of summary judgment).

{¶ 35} While "[c]ourts are cautioned to construe the evidence in favor of the nonmoving party * * * summary judgment is appropriate where the nonmovant fails to respond with proper evidence supporting the essential elements of the claim." *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 29.  Here, without

an expert report sufficiently opining on the causation element of her medical claim against Heartland, Barbara failed to satisfy her reciprocal burden of presenting evidence to demonstrate that a genuine issue of material fact exists in this case. Accordingly, on this record, Heartland was entitled to judgment as a matter of law. *Kinasz* at ¶ 22; *Havenar* at ¶ 17. The trial court did not err in granting summary judgment in favor of Heartland and, accordingly, Barbara's second assignment of error is overruled.

## V. Conclusion

{¶ 36} Having overruled appellant's two assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____